**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

—————————————————————— x

Wayne Catalano, Karen Radford, Christy Deringer,   :
Tomoko Nakanishi, Veronica Pereyra, Roberta   :
Sinico, Barbara Speaks, and Edmond Dixon   :    Case No. 7:22-cv-06867-KMK
individually on behalf of themselves and all others   :
similarly situated,   :
  :
        Plaintiffs,   :    **SECOND AMENDED**
  :    **CLASS ACTION**
v.   :    **COMPLAINT**
  :
Lyons Magnus, LLC and TRU Aseptics, LLC,   :    <u>**JURY TRIAL DEMANDED**</u>
  :
        Defendants.   :

—————————————————————— x

Plaintiffs Wayne Catalano, Karen Radford, Christy Deringer, Tomoko Nakanishi, Veronica Pereyra, Roberta Sinico, Barbara Speaks, and Edmond Dixon (hereinafter "Plaintiffs"), individually and on behalf of all others similarly situated, by their attorneys, allege the following upon information and belief, except for those allegations pertaining to Plaintiffs, which are based on personal knowledge:

<u>**NATURE OF THE ACTION**</u>

1.    This action seeks to remedy the deceptive and misleading business practices of Lyons Magnus, LLC and TRU Aseptics, LLC (hereinafter "Defendants") with respect to the manufacturing, marketing, and sale of Defendants' nutritional and beverage products (hereinafter the "Products")[1] throughout the state of New York and throughout the country.

---

[1] The Products include, but are not limited to, Lyons Ready Care Thickened Dairy Drink- Moderately Thick/Honey Consistency; Lyons Care 2.0 High Calorie High Protein Nutritional Drink, Butter Pecan; Lyons Care 2.0 High Calorie High Protein Nutritional Drink, Dark Chocolate; Lyons Care 2.0 High Calorie High Protein Nutritional Drink, Vanilla; Lyons Care Thickened Dairy Drink- Mildly Thick, Nectar Consistency; Lyons Barista Style Almond Non-Dairy Beverage; Lyons Barista Style Coconut Non-Dairy Beverage; Lyons Barista Style Oat Non-Dairy Beverage; Pirq Plant Protein Decadent Chocolate; Pirq Plant Protein Caramel Coffee; Pirq Plant Protein Golden Vanilla; Pirq Plant Protein Very Strawberry; Glucerna Original 8 fl. oz Tetra Carton 24 Count Club Case: Chocolate, Strawberry, Vanilla; Aloha Chocolate Sea Salt Plant-Based Protein; Aloha Coconut Plant-Based Protein; Aloha Vanilla Plant-Based Protein; Aloha Iced Coffee Plant Based Protein; Intelligentsia Cold Coffee; Intelligentsia

1

2. Defendants have improperly, deceptively, and misleadingly labeled and marketed its Products to reasonable consumers, like Plaintiffs, by omitting and not disclosing to consumers on its packaging that consumption of the Products may increase the risk of contracting invasive infections.

3. As described in further detail below, the Products contain *Cronobacter sakazakii* and/or *Clostridium botulinum*, which could lead to serious and life-threatening adverse health consequences.[2] The risk of serious infection is particularly concerning for infants, the elderly, and immunocompromised individuals who are highly susceptible to severe infection and even death from *Cronobacter sakazakii* and/or *Clostridium botulinum*.[3]

4. Defendants fail to disclose that the Products contain, or are at the risk of containing, *Cronobacter sakazakii* and/or *Clostridium botulinum*.

5. A few representative examples of Defendants' lack of disclosure on the Products are depicted below:

---

Oat Latte; Kate Farms Pediatric Standard 1.2 Vanilla; Oatly Oat-Milk Barista Edition; Premier Protein Chocolate; Premier Protein Vanilla; Premier Protein Café Latte; MRE Cookies and Cream Protein Shake; MRE Milk Chocolate Protein Shake; MRE Salted Caramel Protein Shake 13; MRE Vanilla Milk Shake Protein Shake; Stumptown Cold Brew Coffee with Oat Milk Original; Stumptown Cold Brew Coffee with Oat Milk Horchata; Stumptown Cold Brew Coffee with Oat Milk Chocolate; Stumptown Cold Brew Coffee with Cream and Sugar Chocolate; Stumptown Cold Brew Coffee with Cream and Sugar Original; Imperial Med Plus 2.0 Vanilla Nutritional Drink; Imperial Thickened Dairy Drink- Moderately Thick/Honey Consistency; Imperial Thickened Dairy Drink- Mildly Thick/Nectar Consistency; Imperial Med Plus NSA 1.7 Vanilla Nutritional Drink; and Imperial Med Plus 2.0 Butter Pecan Nutritional Drink.

[2] *Cronobacter sakazakii* is a bacterium that is associated with dry foods, powdered infant formula, powdered milk, herbal teas, starches, meats, water, vegetables, rice, and bread, *see*: https://www.cdc.gov/cronobacter/index.html; *see also* Rick D. Kellerman, MD, Cronobacter Sakazakii, Conn's Current Therapy 2021, accessible at: https://www.sciencedirect.com/topics/medicine-and-dentistry/cronobacter-sakazakii.

[3] *Id.*; *see also* FDA investigation of Cronobacter Infections: Powdered Infant Formula (February 2022), accessible at: https://www.fda.gov/food/outbreaks-foodborne-illness/fda-investigation-cronobacter-infections-powdered-infant-formula-february-2022.



















6.      *Cronobacter sakazakii* is recognized to be an incredibly dangerous and life-threatening substance. *Cronobacter sakazakii* can cause fever, vomiting, urinary tract infection, and even death.[4]

7.      *Clostridium botulinum* may cause a severe form of food poisoning. It can begin from six hours to two weeks after eating foods that contain the toxin. Symptoms may include double vision, blurred vision, drooping eyelids, slurred speech, difficulty swallowing, and muscle weakness. Botulism poisoning can also cause respiratory paralysis, resulting in death, unless assistance with breathing (mechanical ventilation) is provided.[5]

8.      Consumers like Plaintiffs trust manufacturers such as Defendants to sell products that are safe and free from harmful known substances, including *Cronobacter sakazakii* and/or *Clostridium botulinum*.

9.      Plaintiffs and those similarly situated (hereinafter "Class Members") certainly expect that the nutritional and beverage products they purchase will not contain, or risk containing, any knowingly harmful substances that cause severe disease and even be life threatening.

10.      Unfortunately for consumers, like Plaintiffs, the nutritional and beverage Products they purchased contain *Cronobacter sakazakii* and/or *Clostridium botulinum*.

11.      In fact, Defendants recently conducted microbial testing of its manufactured nutritional beverage supplement products, which revealed the presence of *Cronobacter sakazakii* and/or *Clostridium botulinum* in the Products.[6] This resulted in a product recall ("Recall") on July

---

[4] *Id.*

[5] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/lyons-magnus-expands-voluntary-recall-include-additional-nutritional-and-beverage-products-due

[6] https://www.prnewswire.com/news-releases/lyons-magnus-voluntarily-recalls-53-nutritional-and-beverage-products-due-to-the-potential-for-microbial-contamination-301595828.html; *see also* https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/lyons-magnus-voluntarily-recalls-53-nutritional-and-beverage-products-due-potential-microbial.

9, 2022.[7]

12.     Independent testing confirmed and demonstrated the presence of *Cronobacter sakazakii* in the Products.

13.     Defendants are using a marketing and advertising campaign that omits that the Products contain *Cronobacter sakazakii* and/or *Clostridium botulinum*.  This omission leads a reasonable consumer to believe they are not purchasing a product with a known bacterium when in fact they are purchasing a product contaminated with *Cronobacter sakazakii* and/or *Clostridium botulinum*.

14.     Defendants' marketing and advertising campaign includes the one place that every consumer looks when purchasing a product – the packaging and labels themselves.  As such, a reasonable consumer reviewing Defendants' labels reasonably believes that they are purchasing a product that is safe for oral ingestion and does not contain any harmful bacterium.  Indeed, consumers expect the ingredient listing on the packaging and labels to accurately disclose the contents within the Products.  Thus, reasonable consumers would not think that Defendants are omitting that the Products contain, or are at risk of containing, *Cronobacter sakazakii* and/or *Clostridium botulinum*.

15.     Defendants' advertising and marketing campaign is false, deceptive, and misleading because the Products do contain, or risk containing, *Cronobacter sakazakii* and/or *Clostridium botulinum*, which is dangerous to one's health, well-being, and even life.  Nevertheless, Defendants do not list or mention *Cronobacter sakazakii* and/or *Clostridium botulinum* anywhere on the Products' packaging or labeling.

16.     Plaintiffs and Class Members relied on Defendants' misrepresentations and

---

[7] *Id.*

omissions of the safety of the Products and what is in the Products when they purchased them.

17.     Consequently, Plaintiffs and Class Members lost the entire benefit of their bargain when what they received was a nutritional and beverage product contaminated with a known bacterium that is harmful to consumers' health.

18.     That is because Defendants' Products containing, or at risk of containing, a known dangerous substance have no value.

19.     As set forth below, nutritional and beverage products, such as Defendants' Products, protein shakes, dairy alternatives, nutritional shakes, and other nutritional supplements, are in no way safe for humans and are entirely worthless.

20.     Alternatively, Plaintiffs and Class Members paid a price premium for the Products based upon Defendants' health-conscious marketing and advertising campaign including its false and misleading representations and omission on the Products' labels.  Given that Plaintiffs and Class Members paid a premium for the Products, Plaintiffs and Class Members suffered an injury in the amount of the premium paid.

21.     Accordingly, Defendants' conduct violated and continues to violate, *inter alia*, New York General Business Law §§349 and 350.  Defendants also breached and continue to breach their warranties regarding the Products.

22.     Plaintiffs bring this action against Defendants on behalf of themselves and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## **FACTUAL BACKGROUND**

23.     Defendants manufacture, market, advertise, and sell nutritional and beverage products, which include, but are not limited to, protein shakes, dairy alternatives, nutritional

shakes, and other nutritional supplements.[8]

24.     Sales of nutritional beverage products have steadily increased as consumers have become more vigilant and health conscious regarding their protein shakes, dairy alternatives, nutritional shakes, and other nutritional supplements.  With that in mind, the nutritional beverage market was valued at 5.2 billion dollars in 2021 and is expected to reach 10.06 billion dollars by 2029, which computes to a compound annual growth rate of 8.60% during the forecast period of 2022 to 2029.[9]

25.     Consumers have become increasingly concerned about the effects of ingredients in products that they orally ingest.  Companies, such as Defendants, have capitalized on consumers' desire for nutritional beverage products, and indeed, consumers are willing to pay, and have paid, a premium for these products.

26.     Especially at the point of sale, Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains unsafe substances such as *Cronobacter sakazakii* and/or *Clostridium botulinum*, and therefore must and do rely on Defendants to truthfully and honestly report what the Products contain or are at risk of containing on the Products' packaging or labels.

27.     The Products' packaging does not identify *Cronobacter sakazakii* and/or *Clostridium botulinum*.  Indeed, *Cronobacter sakazakii* and/or *Clostridium botulinum* are not listed in the ingredients section, nor is there any warning about the inclusion (or even potential inclusion) of *Cronobacter sakazakii* and/or *Clostridium botulinum* in the Products.  This leads reasonable consumers to believe the Products do not contain, and are not at risk of containing,

---

[8] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/lyons-magnus-voluntarily-recalls-53-nutritional-and-beverage-products-due-potential-microbial.
[9] https://www.databridgemarketresearch.com/reports/global-nutritional-beverages-market.

*Cronobacter sakazakii* and/or *Clostridium botulinum*.

28.     However, the Products contain, or are at risk of containing, *Cronobacter sakazakii* and/or *Clostridium botulinum*.

29.     *Cronobacter sakazakii* is a foodborne bacterium that grows best in dry foods, powdered infant formula, powdered milk, herbal teas, starches, meats, waters, vegetables, rice, and bread.[10]

30.     Moreover, research has confirmed that *Cronobacter sakazakii* ingestion can cause death to infants, the elderly, and immunocompromised individuals.[11]

31.     Defendants recently conducted microbial testing of its manufactured nutritional beverage supplement products, which revealed the presence of *Cronobacter sakazakii* and/or *Clostridium botulinum* in the Products.[12]  This resulted in the Recall.[13]

32.     Independent testing confirmed and demonstrated the presence of *Cronobacter sakazakii* in the Products.

33.     Defendants are large and sophisticated corporations that have been in the business of producing, manufacturing, selling, and distributing nutritional beverage supplemental products for many years, including producing and manufacturing the Products.

34.     Defendants are in the unique and superior position of knowing the ingredients and

---

[10] https://www.cdc.gov/cronobacter/index.html.; *see also* Rick D. Kellerman, MD, Cronobacter Sakazakii, Conn's Current Therapy 2021, accessible at: https://www.sciencedirect.com/topics/medicine-and-dentistry/cronobacter-sakazakii.

[11] https://www.cdc.gov/cronobacter/index.html; *see also* Rick D. Kellerman, MD, Cronobacter Sakazakii, Conn's Current Therapy 2021, accessible at: https://www.sciencedirect.com/topics/medicine-and-dentistry/cronobacter-sakazakii. *Id.*; *see also* FDA investigation of Cronobacter Infections: Powdered Infant Formula (February 2022), accessible at: https://www.fda.gov/food/outbreaks-foodborne-illness/fda-investigation-cronobacter-infections-powdered-infant-formula-february-2022.

[12] https://www.prnewswire.com/news-releases/lyons-magnus-voluntarily-recalls-53-nutritional-and-beverage-products-due-to-the-potential-for-microbial-contamination-301595828.html; *see also* https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/lyons-magnus-voluntarily-recalls-53-nutritional-and-beverage-products-due-potential-microbial.

[13] *Id.*

raw materials used in the manufacturing of its Products and possesses unique and superior knowledge regarding the manufacturing process of the Products, the manufacturing process of the ingredients and raw materials the Products contain, and the risks associated with those processes, such as the risk of *Cronobacter sakazakii* and/or *Clostridium botulinum* contamination.

35.    Accordingly, Defendants possess superior knowledge regarding the risks involved in the production and manufacturing of their Products. Such knowledge is not readily available to consumers like Plaintiffs and Class Members.

36.    Defendants have a duty to provide consumers, like Plaintiffs and Class Members, with accurate information about the contents of the Products.

37.    Therefore, Defendants' false, misleading, and deceptive omissions regarding the Products containing *Cronobacter sakazakii* and/or *Clostridium botulinum* is likely to continue to deceive and mislead reasonable consumers and the public, as they have already deceived and misled Plaintiffs and the Class Members.

38.    Defendants' misrepresentations and omissions were material and intentional because people are concerned with what is in the products that they ingest into their bodies. Consumers such as Plaintiffs and the Class Members are influenced by the marketing and advertising campaign, which includes the Products labels. Defendants know that if they had not omitted that the Products contained *Cronobacter sakazakii* and/or *Clostridium botulinum*, then Plaintiffs and the Class would not have purchased the Products at all.

39.    Through its deceptive advertising and labeling, Defendants have violated, *inter alia*, NY General Business Law § 392-b by: a) putting upon an article of merchandise, bottle, wrapper, package, label, or other thing containing or covering such an article, or with which such an article is intended to be sold, or is sold, a false description or other indication of or respecting

the kind of such article or any part thereof; and b) selling or offering for sale an article which, to its knowledge, is falsely described or indicated upon any such package or vessel containing the same, or label thereupon, in any of the particulars specified.

40. Consumers rely on marketing and information in making purchasing decisions.

41. By omitting that the Products include *Cronobacter sakazakii* and/or *Clostridium botulinum* on the labels of the Products throughout the Class Period, Defendants know that those omissions are material to consumers since they would not purchase a product with a harmful bacterium.

42. Defendants' deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

43. Plaintiffs and the Class Members reasonably relied to their detriment on Defendants' misleading representations and omissions.

44. Defendants' false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiffs and the Class Members.

45. In making the false, misleading, and deceptive representations and omissions described herein, Defendants know and intended that consumers would pay a premium for a product marketed without the bacterium *Cronobacter sakazakii* and/or *Clostridium botulinum* over comparable products not so marketed.

46. As an immediate, direct, and proximate result of Defendants' false, misleading, and deceptive representation and omission, Defendants injured Plaintiffs and the Class Members in that they:

    a.   Paid a sum of money for Products that were not what Defendants represented;

    b.   Paid a premium price for Products that were not what Defendants represented;

    c.   Were deprived of the benefit of the bargain because the Products they purchased was different from what Defendants warranted; and

    d.   Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendants represented.

47.    Had Defendants not made the false, misleading, and deceptive representations and omissions, Plaintiffs and the Class Members would not have been willing to pay the same amount for the Products they purchased and, consequently, Plaintiffs and the Class Members would not have been willing to purchase the Products.

48.    Plaintiffs and the Class Members paid for Products that do not contain *Cronobacter sakazakii* and/or *Clostridium botulinum*.  Since the Products do indeed contain (or risk containing) *Cronobacter sakazakii* and/or *Clostridium botulinum*, a harmful bacterium, the Products that Plaintiffs and the Class Members received were worth less than the Products for which they paid.

49.    Plaintiffs and the Class Members all paid money for the Products; however, Plaintiffs and the Class Members did not obtain the full value of the advertised Products due to Defendants' misrepresentations and omissions.  Plaintiffs and the Class Members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products.  Consequently, Plaintiffs and the Class Members have suffered injury in fact and lost money as a result of Defendants' wrongful conduct.

50.    Plaintiffs and Class Members read and relied on Defendants' representations about the benefits of using the Products and purchased Defendants' Products based thereon.  Had Plaintiffs and Class Members known the truth about the Products, i.e., that it contains a harmful

bacterium (i.e. *Cronobacter sakazakii* and/or *Clostridium botulinum*), they would not have been willing to purchase it at any price, or, at minimum would have paid less for it.

**JURISDICTION AND VENUE**

51.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section §1332(d) in that (1) this is a class action involving more than 100 class members; (2) Plaintiff Wayne Catalano is a citizen of New York, Plaintiff Karen Radford is a citizen of Florida, Plaintiff Christy Deringer is a citizen of Michigan, Plaintiffs Tomoko Nakanishi and Veronica Pereyra are citizens of Illinois, Plaintiff Roberta Sinico is a citizen of Delaware, Plaintiff Barbara Speaks is a citizen of North Carolina, Plaintiff Edmond Dixon is a citizen of South Carolina, Defendant Lyons Magnus, LLC is a citizen of California, and Defendant TRU Aseptics, LLC is a citizen of Wisconsin; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

52.     This Court has personal jurisdiction over Defendants because Defendants conduct and transact business in the state of New York, contract to supply goods within the state of New York, and supply goods within the state of New York.

53.     Venue is proper because Plaintiff Wayne Catalano and many Class Members reside in the Southern District of New York, and throughout the state of New York. A substantial part of the events or omissions giving rise to the Classes' claims occurred in this district.

**PARTIES**

**Plaintiffs**

Plaintiff Catalano

54.     Plaintiff Wayne Catalano is a citizen and resident of Dutchess County, New York. During the applicable statute of limitations period, Plaintiff Catalano purchased and used

Defendants' Products that contained *Cronobacter sakazakii* and/or *Clostridium botulinum*, including Products that were subject to the recall. More specifically, during the class period Plaintiff Catalano purchased Defendants' Premier Protein Vanilla 4 ct/330 ml cartons Product at a Rite Aid brick-and-mortar store in Dutchess County, New York during the Class Period.

55. Had Defendants not made the false, misleading, and deceptive representations and omissions regarding the contents of the Products, Plaintiff Catalano would not have been willing to purchase the Products. Plaintiff Catalano purchased, purchased more of, and/or paid more for, the Products than he would have had he known the truth about the Products. The Products Plaintiff Catalano received were worthless because they contain the known harmful substance, *Cronobacter sakazakii* and/or *Clostridium botulinum*. Alternatively, Plaintiff Catalano paid a price premium based on Defendants' false, misleading, and deceptive misrepresentations and omissions. Accordingly, Plaintiff Catalano was injured in fact and lost money as a result of Defendants' improper conduct.

Plaintiff Karen Radford

56. Plaintiff Karen Radford is a citizen and resident of Escambia County, Florida and at all times relevant hereto, has been a resident of Escambia County. In or around the summer of 2022, Plaintiff Radford purchased the Products at Walmart retail stores located in and around Pensacola, Florida. At the time of purchase, based on the false and misleading claims by Defendants, Plaintiff Radford was unaware that the Products may be adulterated with *Cronobacter sakazakii* and *Clostridium botulinum*. Plaintiff Radford purchased the Products on the assumption that the labeling of the Products were accurate and that the Products were unadulterated, safe, and effective. Plaintiff Radford would not have purchased the Products had she known there was a risk the products may contain Cronobacter sakazakii and Clostridium botulinum. As a result,

Plaintiff Radford suffered injury in fact when she spent money to purchase the Products, which she would not otherwise have purchased absent Defendants' misconduct, as alleged herein. Plaintiff Radford may purchase the Products again if the Products are not contaminated and are properly labeled.

Plaintiff Christy Deringer

57.     Plaintiff Christy Deringer is a resident of Novi, Michigan. Plaintiff Deringer purchased and ingested a Premier Protein supplement produced by Defendants on June 18, 2022, July 13, 2022, and July 28, 2022. Plaintiff Deringer purchased, purchased more of, and/or paid more for, the Products than she would have had she known the truth about the Products. The Products Plaintiff Deringer received were worthless because they contain the known harmful substance, *Cronobacter sakazakii* and/or *Clostridium botulinum*. Alternatively, Plaintiff Deringer paid a price premium based on Defendants' false, misleading, and deceptive misrepresentations and omissions. Accordingly, Plaintiff Deringer was injured in fact and lost money as a result of Defendants' improper conduct.

Plaintiff Tomoko Nakanishi

58.     Plaintiff Tomoko Nakanishi is a resident of Mount Prospect, Illinois. Ms. Nakanishi ingested the Products after regular physical exercise. On or around the time of the recall, Plaintiff Nakanishi became ill, presumably, from the Products. Plaintiff Nakanishi purchased, purchased more of, and/or paid more for, the Products than he would have had he known the truth about the Products. The Products Plaintiff Nakanishi received were worthless because they contain the known harmful substance, *Cronobacter sakazakii* and/or *Clostridium botulinum*. Alternatively, Plaintiff Nakanishi paid a price premium based on Defendants' false, misleading, and deceptive misrepresentations and omissions. Accordingly, Plaintiff Nakanishi

was injured in fact and lost money as a result of Defendants' improper conduct.

Plaintiff Veronica Pereyra

59.     Plaintiff Veronica Pereyra is a resident of Chicago, Illinois. Ms. Pereyra ingested the Products.  On or around the time of the recall, Plaintiff Pereyra became ill, presumably, from the Products.  Plaintiff Pereyra's illness and pain resulted in a hospital visit.  Plaintiff Pereyra purchased, purchased more of, and/or paid more for, the Products than she would have had she known the truth about the Products.  The Products Plaintiff Pereyra received were worthless because they contain the known harmful substance, *Cronobacter sakazakii* and/or *Clostridium botulinum*.  Alternatively, Plaintiff Pereyra paid a price premium based on Defendants' false, misleading, and deceptive misrepresentations and omissions.  Accordingly, Plaintiff Pereyra was injured in fact and lost money as a result of Defendants' improper conduct.

Plaintiff Roberta Sinico

60.     Plaintiff Roberta Sinico is a resident of New Castle County, Delaware. Ms. Sinico purchased and consumed a vanilla flavored Premier Protein supplement produced by Defendants on or around August 15, 2022. Plaintiff Sinico ingested Defendants' products multiple times per day after a surgery and became ill for a few days following her consumption of the Products. Plaintiff Sinico purchased, purchased more of, and/or paid more for, the Products than she would have had she known the truth about the Products.  The Products Plaintiff Sinico received were worthless because they contain the known harmful substance, *Cronobacter sakazakii* and/or *Clostridium botulinum*.  Alternatively, Plaintiff Sinico paid a price premium based on Defendants' false, misleading, and deceptive misrepresentations and omissions.  Accordingly, Plaintiff Sinico was injured in fact and lost money as a result of Defendants' improper conduct.

Plaintiff Barbara Speaks

61. Plaintiff Barbara Speaks is a resident of Thomasville, North Carolina. Plaintiff Speaks used the Products for specific dietary purposes. Plaintiff Speaks was recommended Kate Farms Soul-Source by her dietitian. On or around June 1, 2022, Plaintiff Speaks consumed the Kate Farms product and began having stomach and intestinal issues soon after. Plaintiff Speaks purchased, purchased more of, and/or paid more for, the Products than she would have had she known the truth about the Products. The Products Plaintiff Speaks received were worthless because they contain the known harmful substance, *Cronobacter sakazakii* and/or *Clostridium botulinum*. Alternatively, Plaintiff Speaks paid a price premium based on Defendants' false, misleading, and deceptive misrepresentations and omissions. Accordingly, Plaintiff Speaks was injured in fact and lost money as a result of Defendants' improper conduct.

Plaintiff Edmond Dixon

62. Plaintiff Edmond Dixon is a resident of Goose Creek, South Carolina. Mr. Dixon is a long time Premier Protein drink consumer. Mr. Dixon regularly drinks both chocolate and vanilla flavored Premier Protein drinks, which are produced by Defendants. On or around June 1, 2022, Plaintiff Dixon was diagnosed with a stomach infection due to his consumption of Defendants' Premier Protein brand drinks. Plaintiff Dixon purchased, purchased more of, and/or paid more for, the Products than he would have had he known the truth about the Products. The Products Plaintiff Dixon received were worthless because they contain the known harmful substance, *Cronobacter sakazakii* and/or *Clostridium botulinum*. Alternatively, Plaintiff Dixon paid a price premium based on Defendants' false, misleading, and deceptive misrepresentations and omissions. Accordingly, Plaintiff Dixon was injured in fact and lost money as a result of Defendants' improper conduct.

**Defendants**

63.     Defendant, Lyons Magnus, LLC, is a California corporation with its principal place of business in Fresno, California. Lyons Magnus, LLC is one of the largest manufacturers of foodservice products in the United States and responsible for producing some of the most popular nutritional beverage supplement products at frequented retail locations, including the Products.

64.     Defendant, TRU Aseptics, LLC, is a Wisconsin corporation with its principal place of business in Beloit, California. TRU Aseptics, LLC manufactures, markets, advertises, and distributes the Products throughout the United States.

65.     Defendants manufacture, market, advertise, and distribute the Products throughout the United States. Defendants created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling of the Products.

## CLASS ALLEGATIONS

66.     Plaintiffs bring this matter on behalf of themselves and those similarly situated. As detailed at length in this Complaint, Defendants orchestrated deceptive marketing and labeling practices. Defendants' customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution.

67.     The Class is defined as all consumers who purchased the Products anywhere in the United States during the Class Period (the "Class").

68.     Plaintiffs also seek certification, to the extent necessary or appropriate, of subclasses of individuals who purchased the Products in the following states at any time during the Class Period (collectively "Subclasses"):

**New-York Subclass**

All consumers who purchased the Products in the state of New York at any time during the Class Period (the "New York Subclass").

20

**Florida Subclass**

All consumers who purchased the Products in the state of Florida at any time during the Class Period (the "Florida Subclass").

**Illinois Subclass**

All consumers who purchased the Products in the state of Illinois at any time during the Class Period (the "Illinois Subclass").

**North Carolina Subclass**

All consumers who purchased the Products in the state of North Carolina at any time during the Class Period (the "North Carolina Subclass").

69. Excluded from the Class are Defendants, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice or judicial officer presiding over this matter.

70. The Class and all Subclasses shall be referred to collectively throughout the Complaint as the Class.

71. The Class and Subclasses are properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

72. <u>Numerosity</u>: Class and Subclass Members are so numerous that joinder of all members is impracticable. Plaintiffs believe that there are thousands of consumers in the Class and the Subclasses as described above who have been damaged by Defendants' deceptive and misleading practices.

73. <u>Commonality</u>: The questions of law and fact common to the Class and Subclass Members which predominate over any questions which may affect individual Class and Subclass Members include, but are not limited to:

a. Whether Defendants were responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b. Whether Defendants' misconduct set forth in this Complaint demonstrates that Defendants have engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of their Products;

c. Whether Defendants made false and/or misleading statements and omissions to the Class and Subclass and the public concerning the contents of their Products;

d. Whether Defendants' false and misleading statements and omissions concerning their Products were likely to deceive the public; and

e. Whether Plaintiffs and the Class and Subclasses are entitled to money damages under the same causes of action as the other Class and Subclass Members.

74. Typicality: Plaintiffs are members of the Class. Plaintiffs' claims are typical of the claims of each Class and Subclass Member in that every member of the Class and Subclass was susceptible to the same deceptive, misleading conduct and purchased Defendants' Products. Plaintiffs are entitled to relief under the same causes of action as the other Class and Subclass Members.

75. Adequacy: Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the Class and Subclass Members they seek to represent, their consumer fraud claims are common to all members of the Class and Subclass, they have a strong interest in vindicating their rights, they have retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

76. <u>Predominance</u>: Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class and Subclasses. Common issues fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendants' deceptive and misleading marketing and labeling practices.

77. <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

78. The joinder of thousands of individual Class and Subclass Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

a. The individual claims of the Class and Subclass Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible— to justify individual actions;

b. When Defendants' liability has been adjudicated, all Class and Subclass Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

c. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class and Subclass claims;

d. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

e. This class action will assure uniformity of decisions among Class and Subclass

Members;

f.  The Class and Subclasses are readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

g.  Class and Subclass Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by a single class action; and

h.  It would be desirable to concentrate in this single venue the litigation of all Class and Subclass Members who were induced by Defendants' uniform false advertising to purchase their Products.

79.  Accordingly, this action is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class and Subclass Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## CLAIMS

### FIRST CAUSE OF ACTION
### VIOLATION OF NEW YORK GBL § 349
### (On Behalf of Plaintiff Catalano and New York Subclass Members)

80.  Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

81.  New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

82.  The conduct of Defendants alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff Catalano and the

New York Subclass Members seek monetary damages against Defendants, enjoining them from inaccurately describing, labeling, marketing, and promoting the Products.

83.     There is no adequate remedy at law.

84.     Defendants misleadingly, inaccurately, and deceptively advertise and market their Products to consumers.

85.     Defendants' improper consumer-oriented conduct—including failing to disclose that the Products have *Cronobacter sakazakii* and/or *Clostridium botulinum* —is misleading in a material way in that it, *inter alia*, induced Plaintiff Catalano and the New York Subclass Members to purchase Defendants' Products and to use the Products when they otherwise would not have. Defendants made the untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

86.     Plaintiff Catalano and the New York Subclass Members have been injured inasmuch as they purchased Products that were mislabeled, unhealthy, and entirely worthless. Accordingly, Plaintiff Catalano and the New York Subclass Members received less than what they bargained and paid for.

87.     Defendants' advertising and Products' packaging and labeling induced Plaintiff Catalano and the New York Subclass Members to buy Defendants' Products.

88.     Defendants' deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff Catalano and the New York Subclass Members have been damaged thereby.

89.     As a result of Defendants' recurring, "unlawful" deceptive acts and practices, Plaintiff Catalano and the New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained

by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

## SECOND CAUSE OF ACTION
## VIOLATION OF NEW YORK GBL § 350
### (On Behalf of Plaintiff Catalano and the New York Subclass Members)

90. Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

91. N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

92. N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

93. Defendants' labeling and advertisements contain untrue and materially misleading statements and omissions concerning its Products inasmuch as it misrepresents that the Products are safe for use and doesn't list that the Products contain *Cronobacter sakazakii* and/or *Clostridium botulinum*.

94. Plaintiff Catalano and the New York Subclass Members have been injured inasmuch as they relied upon the labeling, packaging, and advertising and purchased Products that were mislabeled, unhealthy, and entirely worthless. Accordingly, Plaintiff Catalano and the New York Subclass Members received less than what they bargained and paid for.

95. Defendants' advertising, packaging, and Products' labeling induced Plaintiff Catalano and the New York Subclass Members to buy Defendants' Products.

96. Defendants made their untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

97. Defendants' conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

98. Defendants made the material misrepresentations described in this Complaint in their advertising and on the Products' packaging and labeling.

99. Defendants' material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Products were and continue to be exposed to Defendants' material misrepresentations.

100. As a result of Defendants' recurring, "unlawful" deceptive acts and practices, Plaintiff Catalano and New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### BREACH OF EXPRESS WARRANTY
### (On Behalf of Plaintiffs and All Class Members)

101. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

102. Defendants provided Plaintiffs and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Products are safe for use and do not contain *Cronobacter sakazakii* and/or *Clostridium botulinum*.

103. Defendants omitted that the Products contain a known bacterium and this omission would lead reasonable consumers to believe that the Products did not contain a known bacterium, when in fact, the Products were contaminated with *Cronobacter sakazakii* and/or *Clostridium*

*botulinum* as stated herein.

104.     The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

105.     These affirmations of fact became part of the basis for the bargain and were material to Plaintiffs and Class Members' transactions.

106.     Plaintiffs and Class Members reasonably relied upon Defendants' affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendants' Products.

107.     Defendants knowingly breached the express warranties by including *Cronobacter sakazakii* and/or *Clostridium botulinum* in the Products sold to Plaintiffs and the Class without properly notifying them of their inclusion in the Products.

108.     Within a reasonable time after it knew or should have known, Defendants did not change the Products' labels to include *Cronobacter sakazakii* and/or *Clostridium botulinum* in the ingredients list or to otherwise warn consumers that the Products contain, or are at risk of containing, *Cronobacter sakazakii* and/or *Clostridium botulinum*.

109.     Defendants thereby breached the following state warranty laws:

      f.      Code of Ala. § 7-2-313;

      g.      Alaska Stat. § 45.02.313;

      h.      A.R.S. § 47-2313;

      i.      A.C.A. § 4-2-313;

      j.      Cal. Comm. Code § 2313;

      k.      Colo. Rev. Stat. § 4-2-313;

      l.      Conn. Gen. Stat. § 42a-2-313;

m.   6 Del. C. § 2-313;

n.   D.C. Code § 28:2-313;

o.   Fla. Stat. § 672.313;

p.   O.C.G.A. § 11-2-313;

q.   H.R.S. § 490:2-313;

r.   Idaho Code § 28-2-313;

s.   810 I.L.C.S. 5/2-313;

t.   Ind. Code § 26-1-2-313;

u.   Iowa Code § 554.2313;

v.   K.S.A. § 84-2-313;

w.   K.R.S. § 355.2-313;

x.   11 M.R.S. § 2-313;

y.   Md. Commercial Law Code Ann. § 2-313;

z.   106 Mass. Gen. Laws Ann. § 2-313;

aa.  M.C.L.S. § 440.2313;

bb.  Minn. Stat. § 336.2-313;

cc.  Miss. Code Ann. § 75-2-313;

dd.  R.S. Mo. § 400.2-313;

ee.  Mont. Code Anno. § 30-2-313;

ff.  Neb. Rev. Stat. § 2-313;

gg.  Nev. Rev. Stat. Ann. § 104.2313;

hh.  R.S.A. 382-A:2-313;

ii.  N.J. Stat. Ann. § 12A:2-313;

| jj. | N.M. Stat. Ann. § 55-2-313; |
|---|---|
| kk. | N.Y. U.C.C. Law § 2-313; |
| ll. | N.C. Gen. Stat. § 25-2-313; |
| mm. | N.D. Cent. Code § 41-02-30; |
| nn. | II. O.R.C. Ann. § 1302.26; |
| oo. | 12A Okl. St. § 2-313; |
| pp. | Or. Rev. Stat. § 72-3130; |
| qq. | 13 Pa. Rev. Stat. § 72-3130; |
| rr. | R.I. Gen. Laws § 6A-2-313; |
| ss. | S.C. Code Ann. § 36-2-313; |
| tt. | S.D. Codified Laws, § 57A-2-313; |
| uu. | Tenn. Code Ann. § 47-2-313; |
| vv. | Tex. Bus. & Com. Code § 2.313; |
| ww. | Utah Code Ann. § 70A-2-313; |
| xx. | 9A V.S.A. § 2-313; |
| yy. | Va. Code Ann. § 59.1-504.2; |
| zz. | Wash. Rev. Code Ann. § 6A.2-313; |
| aaa. | W. Va. Code § 46-2-313; |
| bbb. | Wis. Stat. § 402.313; and |
| ccc. | Wyo. Stat. § 34.1-2-313. |

110.     As a direct and proximate result of Defendants' breach of the express warranties, Plaintiffs and Class Members were damaged in the amount of the price they paid for the Products, in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
**UNJUST ENRICHMENT[14]**
**(On Behalf of Plaintiffs and All Class Members)**

111.    Plaintiffs and all Class Members conferred benefits on Defendants by purchasing the Products.

112.    Defendant has knowledge of such benefits.

113.    Defendants have been unjustly enriched in retaining the revenues derived from Plaintiffs and Class Members purchasing the Products. Defendant retaining this money under these circumstances is unjust and inequitable because Defendants falsely and misleadingly omitted that that the Products contained or risked containing *Cronobacter sakazakii* and/or *Clostridium botulinum*. Defendants' conduct injured Plaintiffs and Class Members in that had they known of the contamination, or risk of contamination, they would have opted for different products.

114.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and Class Members is unjust and inequitable, Defendant must pay restitution to Plaintiffs and Class Members for unjust enrichment, as ordered by the Court.

**FIFTH CAUSE OF ACTION**
**NEGLIGENT MISREPRESENTATION**
**(On Behalf of Plaintiffs and All Class Members)**

115.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

116.    As alleged above, Defendants misrepresented the health and safety of their Products and omitted that the Products contained, or were at risk of containing, *Cronobacter sakazakii* and/or *Clostridium botulinum*. These misrepresentations and omissions constituted a material fact (i.e. a consumer's decision to purchase the Products would be influenced by its health and safety

---

[14] In the alternative to breach of contract claims.

and the presence of *Cronobacter sakazakii* and/or *Clostridium botulinum*).

117. Defendants' misrepresentations and omissions were made in the course of business transactions (the marketing, advertisement, sale, and purchase of the Products) in which both Plaintiffs and Defendants have a pecuniary interest.

118. Defendants knew (or should have known) that these representations and omissions were false and/or misleading and failed to exercise reasonable care in dissemination of the information contained on its labels and in its marketing and advertising.

119. Defendants possess superior knowledge regarding the risks involved in the production and manufacturing of their Products. Such knowledge is not readily available to consumers like Plaintiffs and Class Members.

120. Defendants have a duty to provide consumers, like Plaintiffs and Class Members, with safe products.

121. Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains unsafe substances, such as *Cronobacter sakazakii* and/or *Clostridium botulinum*, especially at the point of sale, and therefore must and do rely on Defendants to truthfully and honestly report what the Products contain (or are at risk of containing) on the Products' packaging and/or labeling.

122. Defendants intended that their representations and omissions would induce consumers like Plaintiffs and Class Members into purchasing the Products.

123. Plaintiffs' injuries were proximately caused by Defendants' misrepresentations and omissions. Plaintiffs viewed Defendants' labels prior to purchasing the Products, and the representations that the Products were healthy and safe prompted him to purchase the Products. Had Plaintiffs been aware of Defendants' misrepresentations and omissions, they would have been

unwilling to purchase the Products, or to purchase them at the price that they paid.

## SIXTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY
## (On Behalf of Plaintiffs and All Class Members

124.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

125.    Plaintiffs and all Class Members conferred benefits on Defendants by purchasing the Products.

126.    Because the Products contained *Cronobacter sakazakii* and *Clostridium botulinum*, they were not of the same quality as those generally acceptable in the trade and were not fit for the ordinary purposes for which such these nutritional and beverage products are used.

127.    Plaintiffs and members of the Class purchased these Products in reliance upon Defendants' skill and judgment and the implied warranties of fitness for the purpose.

128.    Defendants' Products were not altered by Plaintiffs or members of the Class.

129.    Plaintiffs and members of the Class were foreseeable users of the Products.

130.    Plaintiffs and members of the Class used the Products in the manner intended.

131.    As alleged, the Defendants' Products were not adequately labeled and did not disclose that they contain harmful *Cronobacter sakazakii* and *Clostridium botulinum*.

132.    The Products did not measure up to the promises or facts stated in the written literature, media advertisement and communications by and from Defendants.

133.    Defendants impliedly warranted that the Products were merchantable, fit, and safe for ordinary use.

134.    Defendants further impliedly warranted that the Products were fit for the particular purposes for which they were intended and sold.

135. Contrary to these implied warranties, the Products were defective, unmerchantable, and unfit for their ordinary use when sold, and unfit for the particular purpose for which they were sold.

136. By reason thereof, Plaintiffs and the other Class members have suffered damages in an amount to be proven at trial.

**SEVENTH CAUSE OF ACTION**
**VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**
**FLA. STAT. §§ 501.201-213**
**(On Behalf of Plaintiff Radford and the Florida Subclass Members)**

137. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

138. Plaintiff Radford was a consumer who used the Products primarily for personal use and thereby suffered ascertainable losses, including mental anguish, as a result of Defendants' acts and omissions in violation of the applicable consumer protection laws.

139. The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") renders unlawful unfair methods of competition, unconscionable acts or practice, and unfair or deceptive acts or practices in the conduct of any trade or commerce. Fla. Stat. § 501.204.

140. Among other purposes, FDUTPA is intended "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202.

141. As alleged herein, Plaintiff Radford and the Florida Subclass Members have suffered injury in fact and lost money as a result of Defendants' conduct because they purchased Products from Defendants in reliance on Defendants' representation that the ingredients in their Products were safe and effective and were not contaminated with microorganisms, such as

*Cronobacter sakazakii* and *Clostridium botulinum* bacterium.

142.    Defendants have engaged, and continue to engage, in conduct that is likely to deceive members of the public. This conduct includes representing in their labels that their Products contain only the ingredients listed in the label, which is untrue, and failing to make any mention that the Products are adulterated with microorganisms, such as *Cronobacter sakazakii* and *Clostridium botulinum* bacterium.

143.    Florida Statutes, Section 501.204, makes unfair and/or deceptive trade practices in the conduct of any trade or commerce illegal.

144.    Florida Statutes, Section 501.211, creates a private right of action for individuals who are aggrieved by an unfair and/or deceptive trade practice by another person.

145.    Florida Statutes, Section 501.2105, provides that the prevailing party in litigation arising from a cause of action pursuant to Chapter 501 shall be entitled to recover attorney's fees within the limitations set forth therein from the non-prevailing party.

146.    Florida Statutes, Section 501.213, provides that any remedies available under Chapter 501 are in addition to any other remedies otherwise available for the same conduct under state or local law.

147.    Florida Statutes, Section 501.203 (3)(c), states that a person has violated the FDUTPA if he/she violates "any law, statute, rule, regulation, or ordinance which proscribes unfair, deceptive, or unconscionable acts or practices."

148.    Defendants are engaged in the practice of manufacturing, marketing, distributing, selling, and otherwise placing into the stream of commerce the Products which constitutes trade and commerce as defined by Sections 501.203(8) Fla. Stat., and is therefore subject to FDUPTA.

149.    As a result of Defendants' unfair and deceptive trade practices, Plaintiff Radford and the members of the Florida Subclass are entitled to an award of attorney's fees pursuant to FDUTPA, Florida Statutes, Section 501.2105, if they prevail.

150.    Defendants' conduct with respect to the labeling, advertising, marketing, and sale of their Products is unfair because Defendants' conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims.

151.    In accordance with FDUTPA, Plaintiff Radford seeks an order enjoining Defendants from continuing to conduct business through fraudulent or unlawful acts and practices and to commence a corrective advertising campaign.  Defendants' conduct is ongoing and continuing, such that prospective injunctive relief is necessary.

152.    Plaintiff Radford also seeks an order entitling her and the members of the Florida Subclass to recover all monies spent on the Defendants' Products, which were acquired through acts of fraudulent, unfair, or unlawful competition.  In addition, the measure of restitution should be a full refund of the purchase price insofar as the Products and their associated labels are worthless.  But for Defendants' misrepresentations and omissions, Plaintiff Radford and the members of the Florida Subclass would have paid nothing for Products that have a risk of containing microorganisms such as *Cronobacter sakazakii* and *Clostridium botulinum* bacterium. Indeed, there is no discernible "market" for a nutritional/beverage product that may be adulterated with harmful bacteria. As a result, the Defendants' Products are rendered valueless.

153.    As a result of Defendants' conduct in the manufacture of the Products violating the foregoing statutes and regulations, Plaintiff Radford and the members of the Florida Subclass suffered damages in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION
## FRAUDULENT MISREPRESENTATION
## (On Behalf of Plaintiffs and All Class Members)

154.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

155.    Defendants expressly represented and warranted that the Products were healthy, health promoting, and safe for consumption, especially by physically vulnerable persons or those seeking a nutritional supplement.

156.    Defendants intentionally, knowingly, and recklessly made misrepresentations to induce Plaintiffs and the Class to purchase their Products.

157.    Defendants knew that its representations about the Products were false in that the Products contained, or were at risk of containing, unsafe levels of *Cronobacter Sakazakii* or other unnatural ingredients that do not conform to the products' labels, packaging, advertising, and statements.  Defendants allowed their packaging, labels, advertisements, promotional materials, and websites to intentionally mislead consumers, such as Plaintiff and the Class.

158.    Plaintiffs and the Class relied on these misrepresentations and purchased the Products to their detriment, given the lesser value of the product.  Given the deceptive way Defendants advertised, represented, and otherwise promoted the Products, Plaintiffs and the Class's reliance on Defendants' misrepresentations was justifiable.

159.    As a direct and proximate result of Defendants' conduct, Plaintiffs and the Class have suffered actual damages in that they have purchased the Products that are worth less than the price they paid.  Defendants marketed to Plaintiffs and the Class that the Products were safe, and would not have purchased at all had they known of the presence, or risk of thereof, of *Cronobacter Sakazakii*.

160.    Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

## NINTH CAUSE OF ACTION
## FRAUDULENT OMISSION
### (On Behalf of Plaintiffs and All Class Members)

161.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

162.    Defendants knowingly, intentionally, and materially misrepresented and omitted, concealed from, and failed to disclose to Plaintiffs and the Class that their Products contained, or were at risk of containing, *Cronobacter Sakazakii,* or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

163.    Defendants had a duty to disclose to Plaintiffs and the Class the true quality, characteristics, ingredients, suitability, and risks of the Products because:

a.    Defendants were in a superior position to know the true state of facts about the Products;

b.    Defendants were in a superior position to know the actual ingredients, characteristics, and suitability of the Products for consumption by all ages of persons, particularly those seeking a health supplement; and

c.    Defendants knew that Plaintiffs and the Class could not have reasonably been expected to learn or discover that the Products were misrepresented in the packaging, labels, advertising, and websites prior to purchasing the Recalled Products.

164.    The facts concealed or not disclosed by Defendants to Plaintiffs and the Class are material because a reasonable consumer would consider the safety of a product quite important

38

when deciding whether to purchase Defendant' Products.

165.    Plaintiffs and the Class justifiably relied on Defendants' omissions to their detriment. The detriment is evident from the recall notice and true qualities, characteristics, and ingredients of the Products. All true qualities, characteristics, and ingredients of the Products are inferior in comparison to Defendants' advertisements and representations of the Products.

166.    As a direct and proximate result of Defendants' conduct, Plaintiffs and the Class have suffered actual damages in that they have purchased a Product that is worth less than the price they paid given the potential harm to the consumer and that they would not have purchased at all had they known of the presence or risk of dangerous levels of *Cronobacter Sakazakii.*

167.    Plaintiffs and the Class seek actual damages, injunctive relief, declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

**TENTH CAUSE OF ACTION**
**VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS**
**PRACTICES ACT**
**815 ILLINOIS COMPILED STATUTES 505 *ET SEQ.***
**(On Behalf of Plaintiffs Nakanishi, Pereyra, and the Illinois Subclass Members)**

168.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

169.    The Illinois Business Fraud and Deceptive Business Practices Act states:

> Defendants' materially false misrepresentations, misleading statements, and omissions with respect to the inclusion of unsafe levels of Bacteria in the Recalled Products, as described herein, constitute affirmative misrepresentations and omissions in connection with the marketing, advertising, promotion, and sale of Recalled Products in violation of the Illinois Business Fraud and Deceptive Business Practices Act.

170.    Defendants' false, deceptive, and misleading statements and omissions were and would have been material to any potential consumer's decision to purchase the Products.

171.	Defendants failed to inform consumers that the Products contained unsafe levels of *Cronobacter Sakazakii* and/or other harmful ingredients. This inclusion of unsafe ingredients would have been a material consideration for any consumer in deciding whether to purchase the Products.

172.	Defendants made these false, deceptive, and misleading statements and omissions with the intent that consumers rely upon such statements, and Plaintiffs Nakanishi, Pereyra, and the Illinois Subclass Members relied on such statements and omissions.

173.	Upon information and belief, Defendants' misrepresentations and omissions were created, approved, and implemented from its California headquarters.

174.	Plaintiffs Nakanishi, Pereyra, and the Illinois Subclass Members suffered an ascertainable loss as a direct and proximate result of Defendants' violations of the Illinois Business Fraud and Deceptive Business Practices Act.

175.	Because of Defendants' wrongful actions, Plaintiffs Nakanishi, Pereyra, and the Illinois Subclass Members suffered an ascertainable monetary loss. This loss is based on the price paid for the Products, a price they would not have paid if they were knowledgeable of such contamination or potential contamination.

176.	Plaintiffs Nakanishi, Pereyra, and the Illinois Subclass Members suffered an ascertainable loss caused by Defendants' misrepresentations and omissions because they would not have purchased the unsafe Products if the true facts concerning bacterial contamination would have been known.

177.	Defendants' sale of the Products containing unsafe levels of *Cronobacter Sakazakii* was unconscionable. Further, the misrepresentations and omissions Defendant made regarding the Products were made for the purpose of inducing consumers to purchase the Products and to

40

consume such Products, irrespective of any health consequences. Defendants' conduct was intentional, wanton, willful, malicious, and in blatant disregard or grossly negligent and reckless with respect to the life, health, safety, and the well-being of all persons consuming the Products. Defendants are therefore liable for treble damages and punitive damages, in an amount to be determined at trial.

178. By reason of the foregoing, Defendants are liable to Plaintiffs Nakanishi, Pereyra, and the Illinois Subclass Members for trebled compensatory damages; punitive damages; attorneys' fees, and the costs of this suit. *See* 815 ILCS 505 *et seq.*

179. Plaintiffs Nakanishi, Pereyra, and the Illinois Subclass Members further believe that the notice requirement of 815 ILCS 505 *et seq.* was satisfied, given that the suit was filed after the Defendants' Recall. Given the timing of the recall, the Defendants were already on notice of the defects of these products. If Defendants did not have notice of such issues, no recalls could have been made. Further Defendants were already taking corrective action in regard to such previously described defects. This notice and its following corrective action are the entire purpose of the notice requirement.

## ELEVENTH CAUSE OF ACTION
## VIOLATION OF NORTH CAROLINA N.C. GEN. STAT. § 75-1.1, ET SEQ.
### (Plaintiff Speaks and the North Carolina Subclass Members)

180. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

181. North Carolina Gen. Stat § 75-1.1(a) states: " [u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful."

182. Defendants' misrepresentations and false, deceptive, and misleading statements and omissions with respect to the inclusion of unsafe levels of *Cronobacter Sakazakii* in the Products, as described herein, constitute affirmative misrepresentations and omissions in connection with the marketing, advertising, promotion, and sale of the Products in violation of North Carolina Gen. Stat § 75-1.1 *et seq.*

183. Defendants' false, deceptive, and misleading statements and omissions were and would have been material to any potential consumer's decision to purchase the Products.

184. Defendants failed to inform consumers that the Products contained unsafe levels of *Cronobacter Sakazakii* and/or other harmful ingredients. That information would have been material to any consumer when deciding whether to purchase the Products.

185. Defendants made these false, deceptive, and misleading statements and omissions with the intent that consumers rely upon such statements, and Plaintiff Speaks and the North Carolina Subclass Members did rely on such statements and omissions.

186. Upon information and belief, Defendants' misrepresentations and omissions were created, approved, and implemented from its California headquarters.

187. Plaintiff Speaks and the North Carolina Subclass Members suffered an ascertainable loss as a direct and proximate result of Defendants' violations of North Carolina Gen. Stat § 75-1.1 *et seq.*

188. Because of Defendants' wrongful actions, Plaintiff Speaks and the North Carolina Subclass Members suffered an ascertainable monetary loss based on and measured by the price they paid for the Products, which they would not have paid in the absence of the aforesaid wrongdoing.

189.    Plaintiff Speaks and the North Carolina Subclass Members suffered an ascertainable loss caused by Defendants' misrepresentations and omissions because they would not have purchased the potentially unsafe Products if the true facts concerning unsafe levels of *Cronobacter Sakazakii* and would have been known.

190.    Defendants' sale of the Products containing unsafe levels of *Cronobacter Sakazakii* and for consumption by children was unconscionable, and the misrepresentations and omissions it made regarding the Products were made for the sole purpose of inducing consumers to purchase the Products to consume, irrespective of any health consequences.  Defendants' conduct was intentional, wanton, willful, malicious, and in blatant disregard or grossly negligent and reckless with respect to the life, health, safety, and well-being of persons consuming the Products. Defendants is therefore liable for treble damages and punitive damages, in an amount to be determined at trial.

191.    By reason of the foregoing, Defendants is liable to Plaintiff Speaks and the North Carolina Subclass Members for trebled compensatory damages; punitive damages; attorneys' fees, and the costs of this suit N.C. Gen. Stat. § 75-16.

192.    Plaintiff Speaks and the North Carolina Subclass Members further believe that the notice requirement of N.C. Gen Stat §75 *et seq*. was satisfied given that the suit was filed after the Defendants' recall of products, meaning Defendants were already on notice of the defects of these Products and already taking corrective action to the defects, which is the entire purpose of the notice requirement.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the Class and Subclasses, pray for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiffs as class representatives of the Class under Rule 23 of the FRCP;

(b) Awarding monetary damages and treble damages;

(c) requiring Defendants to pay all actual and statutory damages permitted under the counts alleged herein;

(d) Awarding punitive damages;

(e) Awarding Plaintiffs and Class and Subclass Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiffs' attorneys, experts, and reimbursement of Plaintiffs' expenses;

(f) For an order of restitution and all other forms of equitable monetary relief; and

(g) Granting such other and further relief as the Court may deem just and proper.

Dated: April 14, 2023

**THE SULTZER LAW GROUP P.C.**

By:     Jason P. Sultzer /s/
_____
Jason P. Sultzer, Esq.
Joseph Lipari, Esq.
Daniel Markowitz, Esq.
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com
liparij@thesultzerlawgroup.com
markowitzd@thesultzerlawgroup.com

Charles E. Schaffer, Esq.
David C. Magagna Jr., Esq.
LEVIN SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: 215-592-1500
cschaffer@lfsblaw.com
dmagagna@lfsblaw.com

Eric M. Poulin
Roy T. Willey, IV
Blake G. Abbott
Paul J. Doolittle
POULIN | WILLEY | ANASTOPOULO,
LLC
32 Ann Street
Charleston, SC 29403
Tel: (843) 614-8888
eric@akimlawfirm.com
roy@akimlawfirm.com
blake@akimlawfirm.com
pauld@akimlawfirm.com

Kiley Grombacher, Esq.
BRADLEY/GROMBACHER LLP
31365 Oak Crest Dr., Suite 240
Westlake Village, CA
Kgrombacher@bradleygrombacher.com

Bryan F. Aylstock, Esq.
AYLSTOCK, WITKIN, KREIS &
OVERHOLTZ, PLLC
1700 East Main Street, Suite 200
Pensacola, FL 32502
baylstock@awkolaw.com

*Counsel for Plaintiff and the Class*