UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
Wayne Catalano, Karen Radford, Christy Deringer, :
Tomoko Nakanishi, Veronica Pereyra, Roberta :
Sinico, Barbara Speaks, and Edmond Dixon, : Case No. 7:22-cv-06867-KMK
individually on behalf of themselves and all others :
similarly situated, :
: Hon. Kenneth M. Karas
:
    Plaintiff, :
v. :
:
:
:
Lyons Magnus, LLC and TRU Aseptics, LLC, :
:
    Defendants. :
---------------------------------------------------------------x

**DECLARATION OF JASON P. SULTZER IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS, AND APPROVAL OF NOTICE PLAN**

I, Jason Sultzer, submit this Declaration in support of Plaintiffs' Motion for Preliminary Approval of Settlement, Preliminary Certification of Settlement Class, and Approval of Notice Plan, and affirm that the following is truthful and accurate:

1. I am an attorney duly admitted before this Court. I am a partner at The Sultzer Law Group P.C., which, along with Levin Sedran & Berman, Poulin Willey Anastopoulo, LLC, Bradly/Grombacher, LLP and Aylstock, Witkin, Kreis & Overholtz, PLLC are counsel for Plaintiffs in the above-captioned action.

2. I am one of the attorneys principally responsible for this handling of this case. I am personally familiar with the facts set forth in this declaration. If called as a witness, I could and would competently testify to the matters stated herein.

1

3. On July 28, 2022, Lyons Magnus, LLC ("Lyons Magnus") and TRU Aseptics, LLC ("TRU") announced the voluntary recall of 53 nutritional and beverage products manufactured at their plant in Beloit, Wisconsin from April 1, 2022 through mid-July due to the presence of, and potential for contamination with, Cronobacter sakazakii. On August 10, 2022, Defendants expanded the recall to include 26 additional products and increased the recall period to include most of the products manufactured at the Beloit facility since the fall of 2021. The recall notices advised that anyone who had a recalled product in his or her possession should dispose of it immediately or return it to the place of purchase for a refund.

4. On August 11, 2022, Plaintiff Wayne Catalano filed a class action complaint on behalf of "all consumers who purchased the Products anywhere in the United States during the Class Period," in this Court against Lyons Magnus alleging that Lyons Magnus products sold in the United States were contaminated with the bacteria Cronobacter sakazakii, and seeking compensation for alleged economic losses sustained by U.S. consumer purchasers of the Covered Products. (the "Catalano Action") (Dkt. 1).

5. The Catalano Action alleged violations of New York General Business Law Section 349 and Section 350 and breach of express warranty claims. On January 4, 2023, Plaintiff Catalano filed an Amended Complaint adding TRU as a defendant as well as claims for unjust enrichment and negligent misrepresentation. (Dkt. 14)

6. Similar class action lawsuits arising from the same recall were filed in California, Illinois, Florida, North Carolina, and South Carolina (collectively with the Catalano action, the "Actions" or the "Litigation") alleging violations of state consumer protection laws, breach of express and implied warranty, unjust enrichment, and negligent and/or fraudulent

misrepresentation and omission claims.[1]  Class Counsel worked cooperatively to coordinate the Litigation and to save judicial time and resources to consolidate the multiple similar litigations without a protracted battle for lead counsel and to lead the case to mediation and an early resolution.

7. Defendants filed a Motion to Dismiss each action and, on March 10, 2023, counsel for the Defendants wrote a pre-motion letter to the Court indicating their intent to file a motion to dismiss the Amended Complaint, *inter alia*, on the grounds that:  (a) Plaintiff lacked Article III standing; (b) Plaintiff failed to allege a misstatement, omission, or injury; (c) Plaintiff failed to allege the existence or an express warranty, that the Products were defective, or that Defendants had notice of any alleged defect; (4) Plaintiff failed to allege a deprivation of the benefit of the bargain or a substantive relationship between the parties to sustain the unjust enrichment claim; (5) the negligent misrepresentation claim failed because it was not alleged with particularity, did not allege privity with the Defendants, and was barred by the economic-loss doctrine.  In the alternative, Defendants sought to transfer the Catalano Action to the U.S. District Court for the Eastern District of Wisconsin, where TRU operates. (Dkt. 20).

8. On March 16, 2023, the Parties informed the Court that they had reached a resolution on the matter and requested permission to file a consolidated class action complaint ("CCAC"), which the Court granted.  (Dkts. 21 & 22)

9.  On April 14, 2023, Plaintiffs filed the CCAC, adding Plaintiffs Barbara Speaks, Karen Radford, Tomoko Nakanishi, Roberta Sinico, and Edmond Dixon.  (Dkt. 23).  Plaintiffs alleged that independent testing confirmed the presence of Cronobacter sakazakii in some Products and that Defendants improperly marketed and sold several nutritional and beverage products that

---

[1] A list of the individual actions is attached to the Settlement Agreement as Exhibit D.

contained Cronobacter sakazakii and/or Clostridium botulinum in violation of state law and sought compensation for alleged economic losses sustained by U.S. consumer purchasers of the products. *Id*. The CCAC alleged violations of New York, North Carolina, Illinois, and Florida consumer protection laws and claims for breach of express and implied warranties, fraud, and negligent misrepresentation and unjust enrichment. (the "Litigation") *Id.*

10. Class Counsel worked together to thoroughly analyze the legal landscape, including conducting research into the various state consumer protection laws and available remedies, and evaluating matters relating to class certification, in order to fully evaluate the risks and benefits to a potential early resolution.

11. Class Counsel conducted a detailed and extensive analysis of the claims alleged in the CCAC, including labeling claims for the Covered Products, and the scientific research concerning the dangers of Cronobacter sakazakii and/or Clostridium botulinum.

12. In addition, Class Counsel hired an independent lab to conduct testing on certain of the Covered Products for the presence of Cronobacter sakazakii and/or Clostridium botulinum. The independent testing confirmed that some of those Covered Products contained Cronobacter sakazakii.

13. Moreover, Class Counsel analyzed the chain of distribution of the Covered Products and pricing per unit to help support and determine Plaintiffs' damages model.

14. In addition, Class Counsel conducted research into the market segment related to the Covered Products to understand the potential scope of this matter and marketing and sales trends, practices, and patterns for the relevant industry.

15. Based on the Parties' exchange of discovery to date and their respective investigations into the claims and defenses asserted in the actions, the parties agreed to engage in

settlement negotiations with a private mediator. In connection with the mediation, Class Counsel requested significant mediation discovery in order to evaluate the claims and position themselves to negotiate a settlement that would be fair and reasonable on behalf of the Settlement Class. Specifically, Class Counsel requested, and Defendants produced, documents and information regarding the sales data of Covered Products throughout the Class Period, Defendants' quality control and testing procedures regarding contaminants including Cronobacter sakazakii and/or Clostridium botulinum, and information pertaining to the recall. This is largely the information that Class Counsel would have reviewed had the matter proceeded to formal discovery. Plaintiff also conducted its own due diligence regarding the testing protocols and procedures that Defendant put in place after the contamination was discovered to ensure that a contamination would not reoccur. This information was critical to Plaintiffs' determination that the cause of the contamination has been resolved. In addition, Class Counsel conducted their own testing of the Products which allowed them to estimate the percentage of Products that were actually contaminated.

16. The settlement negotiations were conducted at arm's-length over a period of several months. Before and during these settlement discussions and mediation, the Parties had arm's-length exchange of sufficient information to permit Plaintiffs and their counsel to evaluate the claims and potential defenses and to meaningfully conduct informed settlement discussions. The Parties did not discuss Attorneys' Fees and Costs or any potential Incentive Award until they first agreed on the substantive terms of this settlement.

17. On March 14, 2023, the Parties participated in an all-day face-to-face mediation with JAMS mediator Hon. Steven M. Gold (Ret.) via Zoom.

18. With the assistance of Judge Gold, the Parties reached an agreement in principle at

the mediation session. However, the Parties continued to pursue settlement discussions for several weeks, working out the details of the settlement and culminating in the attached Settlement Agreement, which is the product of hard-fought, arm's-length negotiations.

19. The Settlement Agreement resolves claims regarding Defendants' use of allegedly misleading labels on, and marketing and promotion concerning, the Covered Products. The Settlement Agreement provides significant monetary relief to the Settlement Class Members by way of a Settlement Fund of $3.5 million.

20. All parties executed the Settlement Agreement on or before June 8, 2023.

21. The Settlement Agreement seeks appointment of Angeion Group ("Angeion") as the Claim Administrator to effectuate and administer the Notice Plan. Before selecting Angeion, Plaintiffs sought multiple bids from claims administrators and interviewed and vetted Angeion and its proposed notice plan for this settlement.

22. The Parties selected Angeion based on its reputation for excellent work and breadth of experience administering other similar consumer class actions.

23. Class Counsel have reviewed the proposed notice plan and are satisfied that it is the best notice practicable.

24. Class Counsel are qualified, experienced, and generally able to conduct the Litigation. Class Counsel have invested considerable time and resources into the prosecution of the Litigation and possess a long and proven track record of the successful prosecution of class actions, including false advertising cases, and numerous appointments as class counsel.

25. The Sultzer Law Group has substantial experience with consumer class actions in general, and with consumer fraud and false advertising, specifically. I have prosecuted and been appointed as lead counsel in numerous consumer fraud class action cases throughout the country

in which I have recovered millions of dollars and obtained injunctive relief on behalf of consumers. My significant experience representing consumers in class action litigation is detailed more fully in my firm resume attached hereto as Exhibit 2.

26. Attached hereto as **Exhibit 1** is the Settlement Agreement with exhibits in this action.

27. Attached hereto as **Exhibit 2** is The Sultzer Law Group P.C.'s firm resume.

28. Attached hereto as **Exhibit 3** is Levin Sedran & Berman LLP's firm resume.

29. Attached hereto as **Exhibit 4** is Poulin Willey Anastopoulo, LLC's firm resume.

30. Attached hereto as **Exhibit 5** is Bradly/Grombacher, LLP's firm resume.

31. Attached hereto as **Exhibit 6** is Aylstock, Witkin, Kreis & Overholtz, PLLC's firm resume.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 9th day of June, 2023 in Poughkeepsie, New York.

/s/ *Jason P. Sultzer*
Jason P. Sultzer, Esq.
The Sultzer Law Group, P.C.
85 Civic Center Plaza, Suite 200
Poughkeepsie, New York 12601
Phone: (845) 483-7100
Facsimile: (888) 749-7747