**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————— x

Wayne Catalano Karen Radford, Christy Deringer,  :
Tomoko Nakanishi, Veronica Pereyra, Roberta  :
Sinico, Barbara Speaks, and Edmond Dixon,  :  Case No. 7:22-cv-06867-KMK
individually on behalf of themselves and all others  :
similarly situated,  :
  :  Hon. Kenneth M. Karas
           Plaintiffs,  :
v.  :
  :
  :
Lyons Magnus, LLC and TRU Aseptics, LLC,  :
  :
           Defendants.  :

———————————————————— x


**PLAINTIFFS' MOTION AND MEMORANDUM OF LAW IN**
**SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL**
**<u>APPROVAL OF CLASS ACTION SETTLEMENT</u>**


Dated:  March 11, 2024          **THE SULTZER LAW GROUP P.C.**
                    Jason P. Sultzer, Esq.
                    Joseph Lipari, Esq.
                    Jeremy Francis, Esq.
                    85 Civic Center Plaza, Suite 200
                    Poughkeepsie, NY 12061
                    Tel: (845) 483-7100
                    Fax: (888) 749-7747
                    E-Mail: sultzerj@thesultzerlawgroup.com
                            liparij@thesultzerlawgroup.com
                            francisj@thesultzerlawgroup.com

          **LEVIN SEDRAN & BERMAN**
                    Charles E. Schaffer, Esq.
                    510 Walnut Street, Suite 500
                    Philadelphia, PA 19106
                    Tel: 215-592-1500
                    cschaffer@lfsblaw.com

**POULIN | WILLEY | ANASTOPOULO, LLC**
Eric M. Poulin
Roy T. Willey, IV
Blake G. Abbott
Paul J. Doolittle
32 Ann Street Charleston, SC 29403
Tel: (843) 614-8888
roy@akimlawfirm.com
blake@akimlawfirm.com
pauld@akimlawfirm.com

**BRADLEY/GROMBACHER LLP**
Kiley Grombacher, Esq.
31365 Oak Crest Dr., Suite 240
Westlake Village, CA
Kgrombacher@bradleygrombacher.com

**AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC**
Bryan F. Aylstock, Esq.
1700 East Main Street, Suite 200
Pensacola, FL 32502
baylstock@awkolaw.com

*Attorneys for Plaintiffs and the Settlement Class*

## **TABLE OF CONTENTS**

Table of Contents…………………………………………………………………...…i-ii

Table of Authorities………………………………………………………………...…iii-vii

I. INTRODUCTION……………………………………………………………………..1

II.      FACTUAL AND PROCEDURAL BACKGROUND……………………………..2

    A.  Factual Background…………………………………………………………2

    B.  Procedural History and Settlement Negotiations…………………………………3

III.     KEY TERMS OF THE SETTLEMENT…………………………………………...5

    A.  Class Definition…………………………………………………………...5

    B.  Monetary Relief…………………………………………………………...5

    C.  The Release……………………………………………………………6

    D.  Notice and Administrative Expenses……………………………………………...6

    E.  Incentive Award, Attorneys' Fees, Costs and Expenses…………………………7

IV.     CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS
    APPROPRIATE………………………………………………………………7

    A.  Numerosity………………………………………………………………...8

    B.  Commonality……………………………………………………………8

    C.  Typicality……………………………………………………………9

    D.  Adequacy…………………………………………………………...10

    E.  The Proposed Settlement Class Meets The Requirements Of Rule23(b)(3)…….11

        1.  *Common Questions Predominate*…………………………………………12

        2.  *A Class Action Is A Superior Mechanism For Adjudication*………………...13

V.      THE NOTICE PLAN COMPORTS WITH DUE PROCESS………………………14

i

VI.     THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND
        ADEQUATE AND SHOULD BE FINALLY APPROVED BY THE COURT…….16

        A.  The *Grinnell* Factors…………………………………………………..17

            1.  *Litigation Through Trial Would be Complex, Costly, And Long (Grinnell
                Factor 1)*……………………………………………………………..17

            2.  *The Reaction Of The Class Is Overwhelmingly Positive (Grinnell Factor 2)*.18

            3.  *The Stage of The Proceedings And The Amount of Discovery Completed*…..19

            4.  *The Risks of Establishing Liability And Damages*…………………………...20

            5.  *The Risk of Maintaining Class Action Status Through Trial*……………...21

            6.  *The Ability of Defendants To Withstand Greater Judgment*…………………21

            7.  *The Range of Reasonableness of The Settlement In Light of The Best
                Possible Recovery And In Light of All The Attendant Risks of Litigation*…...21

        B.  The Rule 23(e)(2) Factors………………………………………………...23

            1.  *Class Counsel and Plaintiffs Adequately Represented The Class*…………..23

            2.  *The Settlement Was Negotiated At Arm's Length*……………………...….23

            3.  *The Settlement Provides Adequate Relief To The Class*……………….…..24

            4.  *The Settlement Treats All Class Members Equally*………………………..25

VII.    CONCLUSION…………………………………………………………………26

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litigs.*,
    271 F. App'x 41 (2d Cir. 2008) ............................................................14

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)......................................................................12, 13

*Ansari v. New York University*,
    2018 WL 3715273 (S.D.N.Y. 1998)............................................................9

*Augustin v. Jablonsky* (In re Nassau County Strip Search Cases),
    461 F.3d 219, 227-28 (2d Cir. 2006)…………………………………………………………...12

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000)....................................................17, 20

*Bangoura v. Beiersdorf, Inc.*,
    Case No. 1:22-cv-00291-BMC (E.D.N.Y) ..............................................1, 23

*Charron v. Wiener*,
    731 F.3d 241 (2d Cir. 2013)................................................................10

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)........................................................ *passim*

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001)…………………………………………….......................17

*D.S. v. New York City Dep't of Educ.*,
    255 F.R.D. 59 (E.D.N.Y. 2008) ............................................................19

*Delcid v. TCP Hot Acquisition LLC*,
    Case No. 1:21-cv-09569-DLC (S.D.N.Y.) ...................................................1

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)........................................................................14

*Ferrick v. Spotify USA Inc.*,
    2018 WL 2324076 (S.D.N.Y. May 22, 2018) ...............................................24

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005)...........................................9, 13, 21, 22

*General Tel. Co. v. Falcon*,
   457 U.S. 147 (1982)........................................................................11

*Goldstein v. Henkel Corporation et al.*,
   Case No. 3:22-cv-00164-AWT (D. Conn.).........................................2

*Gordon v. Vanda Pharmaceuticals Inc.*,
   2022 WL 4296092 (E.D.N.Y. Sept. 15, 2022) ................................25

*Green v. Wolf Corp.*,
   406 F.2d 291 (2d Cir. 1968)...........................................................13

*In re GSE Bonds Antitrust Litig.*,
   414 F. Supp. 3d 686 (S.D.N.Y. 2019)............................................23

*In re GSE Bonds Antitrust Litig.*,
   414 F. Supp. 3pd ...........................................................................25

*Hart v. BHH, LLC*,
   2017 WL 2912519 (S.D.N.Y. July 7, 2017) .....................................9

*Hernandez v. Uzzal Pizzeria, Inc.*,
   2022 WL 1032522 (S.D.N.Y. Apr. 6, 2022)....................................24

*Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*,
   333 F.R.D. 314 (S.D.N.Y. 2019) ...................................................16

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
   2020 WL 7389330 (S.D.N.Y. Dec. 16, 2020) ................................25

*Marisol A. v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997)....................................................7, 8, 10

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
   2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009). ................................14

*Massiah v. MetroPlus Health Plan, Inc.*,
   2012 WL 5874655 (E.D.N.Y. 2012)...............................................18

*Masters v. Wilhelmina Model Agency, Inc.*,
   473 F.3d 423 (2d Cir. 2007)......................................................22, 24

*Mayhew, v. KAS Direct LLC*,
   Case No. 16-cv-6981 (Briccetti, J) .................................................20

*McBean v. City of New York*,
   228 F.R.D. 487 (S.D.N.Y. 2005) ...................................................12

iv

*Meredith Corp. v. SESAC, LLC,*
  87 F. Supp. 3d 650 (S.D.N.Y. 2015)................................................................13, 25

*In re MetLife Demutualization Litig.,*
  689 F. Supp. 2d 297 (E.D.N.Y. 2010) ...........................................................18

*Newman v. Stein,*
  464 F.2d 689 (2d Cir. 1972).............................................................................22

*In re PaineWebber,*
  171 F.R.D. 104 (S.D.N.Y. 1997) .....................................................................20

*Patellos v. Hello Products, LLC,*
  2022 WL 2159566 (S.D.N.Y. June 15, 2022) ................................................25

*Patora v. Tarte, Inc.,*
  Case No. 18-cv-11760-KMK (S.D.N.Y.) (Karas, J)......................................19

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,*
  986 F. Supp. 2d 207 (E.D.N.Y. 2013) ...........................................................19

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.,*
  2019 WL 6875472 (E.D.N.Y. Dec. 16, 2019) ................................................17

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.,*
  330 F.R.D.................................................................................................24, 25

*In re Petrobas Sec.,*
  862 F.3d at 268 ................................................................................................13

*In re Prudential Insur. Sales Practices Litig.,*
  962 F. Supp. 450 (D.N.J. 1997) ......................................................................12

*Rapoport-Hecht v. Seventh Generation,*
  Case No. 7:14-cv-09087 (S.D.N.Y.) (Karas, J.) ...........................................19

*Robidoux v. Celani,*
  987 F.2d 931 (2d Cir. 1993)..........................................................................9, 10

*Rossini v. Ogilvy & Mather, Inc.,*
  798 F.2d 590 (2d Cir. 1986).............................................................................12

*Shaya Eidelman v. Sun Prods. Corp.,*
  2022 U.S. App. LEXIS 15480 (2d Cir. 2022) ................................................21

*Swetz v. GSK Consumer Health*, Inc.,
  7:20-cv-04731-NSR (S.D.N.Y) (Roman, J)…………………………………….20

*TBK Partners, Ltd. v. Western Union Corp.*,
   517 F. Supp. 380 (S.D.N.Y. 1981), aff'd, 675 F.2d 456 (2d Cir. 1982)................................17

*Trinidad v. Pret a Manger (UDS) Ltd.*,
   2014 WL 4670870 (S.D.N.Y. Sept. 19, 2014).........................................................................24

*In re Visa Check/MasterMoney Antitrust Litig.*,
   280 F.3d 124 (2d Cir. 2001)..................................................................................................13

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011).............................................................................................................8

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005).............................................................................................14, 16

*Weigner v. City of N.Y.*,
   852 F.2d 646 (2d Cir. 1988)..................................................................................................14

*Willix v. Healthfirst, Inc.*,
   2011 WL 7584862 (E.D.N.Y. Feb. 18, 2011).........................................................................20

*Zivkovic v. Laura Christy LLC*,
   329 F.R.D. 61 (S.D.N.Y. 2018)..............................................................................................8

**Statutes**

CAFA .....................................................................................................................................15

Fed. R. Civ. P. 23 .........................................................................................................7, 14, 15

Fed. R. Civ. P. 23(a)(4)...........................................................................................................10

Fed. R. Civ. P. 23(c)(2)(B) .................................................................................................14, 18

Rule 23(a).........................................................................................................................7, 10, 12

Rule 23(a)(1)............................................................................................................................8

Rule 23(a)(2)........................................................................................................................8, 9

Rule 23(a)(3)............................................................................................................................9

Rule 23(a) and Rule 23(b)(3)...................................................................................................8

Rule 23(b) ...............................................................................................................................7

Rule 23(b)(3).........................................................................................................7, 11, 12, 13

Rule 23(e)...............................................................................................................................16

Rule 23(e)(2) ...................................................................................................................16, 17, 25

Rule 23(e)(2)(C)(i-iv) ..............................................................................................................24

Rule 23(e)(3) ......................................................................................................................16, 24, 25

Plaintiffs Wayne Catalano, Karen Radford, Christy Deringer, Tomoko Nakanishi, Veronica Pereyra, Roberta Sinico, Barbara Speaks, and Edmond Dixon ("Plaintiffs") respectfully submit this memorandum of law in support of Plaintiffs' Motion for Final Approval of Class Action Settlement[1] (hereinafter the "Motion").

## I.    INTRODUCTION

On October 27, 2023, this Court preliminarily approved the class action settlement between Plaintiffs and Defendants Lyons Magnus, LLC ("Lyons") and TRU Aseptics, LLC ("Tru") (collectively "Defendants") and directed that notice be sent to the Settlement Class. ECF No. 34. The settlement administrator, Angeion Group ("Angeion") has implemented the Court-approved notice plan and direct notice has reached an estimated 75.34% of the Settlement Class.[2] The reaction from the Settlement Class has been overwhelmingly positive. Specifically, of the 180,701 Settlement Class Members that made claims, zero objected, and only twelve requested to be excluded. The Settlement is an excellent result for the class and the Court should grant final approval.

The Settlement's strength speaks for itself: it creates a $3.5 million non-reversionary common fund from which each Settlement Class Member who submits a Valid Claim will receive a cash payment. Notably, this Settlement falls squarely within the range established by previous, similar settlements concerning the contamination of consumer products. *See, e.g.*, *Bangoura v. Beiersdorf, Inc.*, Case No. 1:22-cv-00291-BMC (E.D.N.Y) ($2.3MM common fund); *Delcid v.*

---

[1] Unless otherwise indicated, capitalized terms shall have the same meaning as they do in the Settlement Agreement. References to "§ __" are to sections in the Settlement Agreement, submitted as Exhibit 1 to the Declaration of Jason Sultzer In Support of Plaintiffs' Motion for Final Approval (the "Sultzer Decl.") and all Settlement Agreement Exhibits are referred to as "Ex [Letter]."

[2] The Federal Judicial Center states that a publication notice plan that reaches 70% of class members is one that reaches a "high percentage" and is within the "norm." Barbara J. Rothstein & Thomas E. Willging, Federal Judicial Center, "Managing Class Action Litigation: A Pocket Guide or Judges," at 27 (3d Ed. 2010).

*TCP Hot Acquisition LLC*, Case No. 1:21-cv-09569-DLC (S.D.N.Y.) ($3.65MM common fund); *Goldstein v. Henkel Corporation et al.*, Case No. 3:22-cv-00164-AWT (D. Conn.) ($1.95MM common fund).

Moreover, Settlement Class Members who made claims received a substantial recovery as a result of the Settlement Agreement. Of the 180,701 Valid Claims made as a result of the Notice Program, 133 were submitted with Proof of Purchase and 180,568 Valid Claims were submitted without Proof of Purchase. *See* Declaration of Steven Weisbrot submitted herewith, ¶ 19. The average recovery for claimants who submitted proof of purchase is estimated to be $25.19, while the average estimated recovery for those that submitted a Valid Claim without proof of purchase is $9.31. *Id.* at ¶ 21.

For these reasons, and as explained further below, the Settlement is fair, reasonable, and adequate, and warrants this Court's final approval.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Background

Plaintiffs are purchasers of Defendants' 79 recalled nutritional and beverage products manufactured at their plant in Beloit, Wisconsin from fall of 2021 through mid-July due to the presence of, and potential for contamination with, *Cronobacter sakazakii* and/or *Clostridium botulinum*. ("Covered Products"). In the Litigation, Plaintiffs asserted claims seeking to recover economic damages individually and on behalf of a nationwide class of purchasers of the Covered Products, which Plaintiffs allege Defendants manufactured and distributed and were deceptively and misleadingly marketed, advertised, labeled, and sold while containing or at the risk of containing dangerous *Cronobacter sakazakii* and/or *Clostridium botulinum*. (Dkt. 23).

Defendants deny liability, and filed pre-motion letter to the Court indicating their intent to file a motion to dismiss the Amended Complaint, *inter alia*, on the grounds that:  (a) Plaintiff lacked Article III standing; (b) Plaintiff failed to allege a misstatement, omission, or injury; (c) Plaintiff failed to allege the existence or an express warranty, that the Products were defective, or that Defendants had notice of any alleged defect; (4) Plaintiff failed to allege a deprivation of the benefit of the bargain or a substantive relationship between the parties to sustain the unjust enrichment claim; (5) the negligent misrepresentation claim failed because it was not alleged with particularity, did not allege privity with the Defendants, and was barred by the economic-loss doctrine. (Dkt. 20). Nevertheless, Defendants have agreed to enter into this Settlement Agreement to avoid further expense, inconvenience, and interference with ongoing business operations, and to dispose of burdensome litigation.

### B.    Procedural History and Settlement Negotiations

Before commencing the Litigation, Class Counsel extensively investigated and analyzed, among other things, Defendants' marketing campaign, the relevant FDA guidelines concerning labeling and advertising disclosure requirements for nutritional beverages and related products, FDA guidelines regarding the presence of *Cronobacter sakazakii* and/or *Clostridium botulinum* in consumer products, the scientific research concerning the dangers of *Cronobacter sakazakii*, and research regarding how Defendants should have known the Products contained *Cronobacter sakazakii* and/or *Clostridium botulinum*.

On August 11, 2022, Plaintiff Wayne Catalano filed a class action complaint on behalf of "all consumers who purchased the Products anywhere in the United States during the Class Period," in this Court against Lyons Magnus alleging that Lyons Magnus products sold in the United States were contaminated with the bacteria *Cronobacter sakazakii* and/or *Clostridium*

*botulinum* and seeking compensation for alleged economic losses sustained by U.S. consumer purchasers of the Covered Products. Similar class action lawsuits arising from the same recall were filed in California, Illinois, Florida, North Carolina, and South Carolina (collectively with the Catalano action, the "Actions" or the "Litigation") alleging violations of state consumer protection laws, breach of express and implied warranty, unjust enrichment, and negligent and/or fraudulent misrepresentation and omission claims.[3]

On March 16, 2023, Counsel for the Catalano Action filed a letter with the court requesting leave to notice settlement and file a consolidated complaint. (Dkt. 21). On April 14, 2023, with the Court's permission, Plaintiffs filed a consolidated class action complaint ("CCAC") in the Catalano action adding Plaintiffs Barbara Speaks, Karen Radford, Tomoko Nakanishi, Roberta Sinico, and Edmond Dixon.  (Dkt. 23). The CCAC alleged violations of New York, North Carolina, Illinois, and Florida consumer protection laws and claims for breach of express and implied warranties, fraud, and negligent misrepresentation and unjust enrichment. (the "Litigation") *Id.*

The Settlement was reached as a result of extensive arm's-length negotiations between the Parties and counsel, facilitated by a mediation with a respected mediator, the Honorable Judge Steven Gold (Ret.), on March 14, 2023. Before and during these settlement discussions and mediation, the Parties exchanged sufficient information to permit Plaintiffs and their counsel to evaluate the claims and potential defenses and to meaningfully conduct informed settlement discussions. The Parties did not discuss Attorneys' Fees and Costs or any potential Incentive Award until they first agreed on the substantive terms of this settlement. § 1.5.

---

[3] A list of the individual actions is attached to the Settlement Agreement as Exhibit D.

On June 12, 2023, Counsel for Plaintiffs to the CCAC filed their Motion to Preliminarily Approve the Settlement and Certify the Settlement Class, along with their supporting memorandum of law. (Dkt. 30-32). This Court held proceedings on October 27, 2023, and on the same day, issued its order granting the Motion to Certify Class. (Dkt. 34).

## III.    KEY TERMS OF THE SETTLEMENT

### A.    Class Definition

The "Settlement Class" or "Settlement Class Members" is defined as: All natural persons who, between the earliest date of distribution of any Covered Product and the date of Preliminary Approval, purchased in the United States any Covered Product for personal, family or household use, and not resale. § 2.38.

### B.    Monetary Relief

The Settlement Fund is a non-reversionary fund that shall be established by or on behalf of Defendants in the total amount of three million five hundred thousand dollars ($3,500,000 USD), which will be exhausted to pay all Valid Claims, as well as any Attorneys' Fee, Cost and Incentive Awards[4], and settlement administration costs that are approved by the Court. §3.1. Settlement Class Members who submit a Valid Claim Form with Proof of Purchase shall receive the full purchase price for each Covered Product listed on the Proof of Purchase, inclusive of all taxes. § 3.4(a). Settlement Class Members who submit a Valid Claim Form without Proof of Purchase shall receive the average retail price (determined by Plaintiffs to be $5.75) for up to two (2) Covered Products claimed per household plus a 10% allowance for sales tax, as such price is determined in good faith by the Defendants and provided to the Claim Administrator. § 3.4(b). Settlement Class

---

[4] Defendants have agreed to pay service awards to the Class Representatives for up to $500 per representative (See §§ 3.1 & 5.2)

Members who obtained a refund from the Recall may be able to receive further relief from the settlement. If a Settlement Class Member submitted a claim in the Recall, the amount of that Settlement Class Member's payment shall be reduced by the amount each Settlement Class Member has received or shall receive from the Recall (provided that the payment shall not be reduced below $0.00). § 3.4(c). Each Settlement Class Members' payment shall be increased or decreased on a *pro rata* basis such that the total amount paid to all Settlement Class Members equals the Available Settlement Funds. § 3.5. In the event any checks issued to pay Valid Claims are uncashed or not redeemed for 120 days, such funds shall be donated to the Impact Fund. § 3.15. All of this ensures that no settlement funds will revert to Defendants.

### C.    The Release

The Settlement Agreement provides that upon the Effective Date, Settlement Class Members shall forever release Defendants from any and all claims for economic harm arising out of or related to the Litigation, including claims related to the presence of *Cronobacter sakazakii* and/or *Clostridium botulinum* or any other bacteria or contaminant in the Covered Products that were, or could have been, asserted in this Litigation and any economic harm resulting from any acts, omissions or misrepresentations concerning the presence of *Cronobacter sakazakii*, *Clostridium botulinum*, or any other bacteria or contaminant in the Covered Products. § 7.2(a)

### D.    Notice and Administration Expenses

The Settlement Fund will be used to pay the cost of Settlement Administration Expenses, which includes sending the Notice set forth in the Settlement Agreement, as well as all costs of administering the Settlement. § 3.1. In addition, Plaintiffs were able to negotiate and secure an additional $75,000 from Defendants towards the cost of the notice, which will help preserve funds available from the Common Fund to the Class.   *Id*.

6

### E.    Incentive Award, Attorneys' Fees, Costs, and Expenses

Per the Settlement Agreement, prior to the scheduled hearing on Final Approval and in accordance with the Courts' regular notice requirements, Plaintiffs' Counsel may apply to the Court for an award of their Attorneys' Fees and Costs in a total amount not to exceed one-third of the Settlement Fund, to which Defendants retain the right to object. § 5.1. In addition, prior to the scheduled hearing on Final Approval and in accordance with the Courts' regular notice requirements, the Class Representatives may apply to the Court for an incentive award from payable from the Settlement Fund of up to $500 each as compensation for (a) the time and effort undertaken in and risks of pursuing this Litigation. § 5.2.

## IV.    CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE

The Court's Preliminary Approval Order provisionally certified the class for settlement purposes.  (ECF No. 34).  Under Fed. R. Civ. P. 23, a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Rule 23(b)(3) requires the Court to find that:

> Questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3). In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class certification. *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997) (internal citation omitted).

7

The Court should now grant final certification because the Settlement Class meets all of the requirements of Rule 23(a) and Rule 23(b)(3). Indeed, in granting preliminary approval this Court already determined that class certification for settlement purposes is warranted. *See* ECF No. 34.

### A.    Numerosity

Under Rule 23(a)(1), plaintiffs must show that the proposed class is "so numerous that joinder of all [its] members is impracticable." Fed. R. Civ. P. 23(a)(1). The Second Circuit has found numerosity met where a proposed class is "obviously numerous." *Marisol*, 126 F.3d 372, 376 (2d Cir. 1997). Here, there is no dispute that hundreds of thousands of people nationwide purchased the Covered Products during the proposed class period. Numerosity is easily satisfied, and joinder of so many class members is impractical. *Id.*

### B.    Commonality

Rule 23(a)(2) requires that a plaintiff establish that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This threshold is satisfied if the question is "capable of class wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "[A] single [common] question will" satisfy the commonality inquiry. *Id.* at 359. "The claims for relief need not be identical for them to be common." *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 69 (S.D.N.Y. 2018).

Here, there are common issues of law and fact that affect the Class uniformly and satisfy the commonality requirement, including, among other things: whether Defendants' failure to disclose the presence or the risk of *Cronobacter sakazakii*, *Clostridium botulinum*, or any other bacteria in the Covered Products was likely to deceive reasonable consumers; whether Defendants:

8

(1) violated the consumer statutes set forth in the CCAC, (2) breached express warranties with regard to the Covered Products; and (3) breached the implied warranty of merchantability; (4) whether members of the Settlement Class were injured and the proper measure of their losses as a result of those injuries; (5) whether members of the Settlement Class are entitled to damages and the amount of such damages (including compensatory, exemplary, statutory damages, and/or punitive damages); and (6) whether members of the Settlement Class are entitled to declaratory, injunctive, or other equitable relief.

Resolution of these common questions would require evaluation of the question's merits under a single objective standard, i.e., the "reasonable consumer" test. *Hart v. BHH, LLC*, 2017 WL 2912519, at *6 (S.D.N.Y. July 7, 2017) (commonality met where "the putative class members relied on the same alleged misrepresentations of fact regarding the efficacy of the pest repeller and suffered the same economic harm."). These common questions, which target the same alleged misconduct by Defendants, satisfy Rule 23(a)(2).

### C.    Typicality

The next requirement – typicality – requires that a class representative have claims that are typical of those of the putative class members. Fed. R. Civ. P. 23(a)(2). Typicality is met here. "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 182 (W.D.N.Y. 2005).

In the Second Circuit, "Rule 23(a)(3)'s typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993); *accord Ansari v. New York University*, 2018 WL 3715273, at *115 (S.D.N.Y. 1998). Here,

the alleged injuries to Plaintiffs and members of the Settlement Class are attributable to the same alleged course of conduct by Defendants, and liability for this conduct is predicated on the same legal theories. *Robidoux*, 987 F.2d 931, 936-37 (2d Cir. 1993). Like Plaintiffs, each member of the Settlement Class was exposed to the same allegedly deceptive marketing practices and purchased Products that contained *Cronobacter sakazakii*, *Clostridium botulinum*, or any other bacteria or were at the risk of containing these bacteria, known to be harmful to humans, without intending to do so. Plaintiffs and members of the Settlement Class suffered the same harm because the Covered Products were falsely marketed as safe for normal use when, in reality, they contained or were at the risk of containing *Cronobacter sakazakii*/*Clostridium botulinum*. Stated differently, the harm suffered by Plaintiffs is representative of the harmed suffered by members of the Settlement Class because they purchased products that were contaminated with or were at the risk of being contaminated with *Cronobacter sakazakii*/*Clostridium botulinum* without intending to do so, thereby incurring economic injuries.

### D.     Adequacy

The final Rule 23(a) prerequisite requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Rule 23(a)(4) permits certification of a class only if "the representative parties will fairly and adequately protect the interests of the class," which requires: (1) the class representatives do not have conflicting interests with other class members; and (2) class counsel is "qualified, experienced and generally able to conduct the litigation." *Marisol*, 126 F.3d 372, 378 (2d Cir. 1997).

Plaintiffs and their counsel are adequate. To satisfy the first requirement, plaintiffs must show that "the members of the class possess the same interests" and that "no fundamental conflicts exist" between the class representatives and class members. *Charron v. Wiener*, 731 F.3d 241, 249

(2d Cir. 2013). Here, Plaintiffs do not have any conflicts of interest with the absent members of the proposed Settlement Class, as their claims are coextensive with those of the proposed Settlement Class. *General Tel. Co. v. Falcon*, 457 U.S. 147, 157-58, fn. 13 (1982). Plaintiffs possess the same interests as members of the proposed Settlement Class because they have incurred the same alleged injuries, which occurred in the same manner and based on the same allegedly misleading conduct concerning the Covered Products. See generally CCAC (explaining Plaintiffs and other members of the Settlement Class purchased the Products during the Class Period and were injured at the point of sale as a result of the Products' alleged misbranding and misrepresentations).

Likewise, Class Counsel has extensive experience in litigating class actions of similar size, scope, and complexity to the instant action. Sultzer Decl. ¶ 13. Class Counsel regularly engages in major complex class action litigation, has the resources necessary to conduct litigation of this nature, and has frequently been appointed lead class counsel by courts throughout the country. *Id.*; *see also* ECF Docs. 32-2 through 32-6.  Plaintiffs' Counsel has substantial experience prosecuting actions that involve deceptive labeling of consumer products.  *Id.*

Accordingly, because Plaintiffs and Class Counsel have demonstrated their commitment to representing the Settlement Class and neither have interests antagonistic to the Settlement Class, the adequacy requirement is satisfied.

### E.    The Proposed Settlement Class Meets The Requirements Of Rule 23(b)(3)

Rule 23(b)(3) requires that common questions of law or fact not only be present, but "predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to

warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). That Plaintiffs easily meet the Rule 23(a) criteria is a strong indicator that Rule 23(b)(3) is satisfied. *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) (satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality").

### 1.    *Common Questions Predominate*

Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005). In this case, there was a common course of conduct engaged in by Defendants. The central legal issues in this case that likely would be presented at the summary judgment stage, including whether the Covered Products contain *Cronobacter sakazakii*, *Clostridium botulinum*, or any other bacteria (and if so, whether the Covered Products contained harmful levels of *Cronobacter sakazakii*, *Clostridium botulinum*, or any other bacteria), whether Defendants knew or should have known of the alleged *Cronobacter sakazakii* or *Clostridium botulinum* contamination, whether Defendants' failure to disclose the presence of *Cronobacter sakazakii*, *Clostridium botulinum*, or other bacteria in the Covered Products was likely to deceive reasonable consumers, and whether the omissions were material. These central common questions predominate over any questions that may affect individual Settlement Class Members, are subject to "generalized proof," and "outweigh those issues that are subject to individualized proof." *Augustin v. Jablonsky* (In re Nassau County Strip Search Cases), 461 F.3d 219, 227-28 (2d Cir. 2006). In these circumstances, courts find, particularly for purposes of settlement, that there is predominance of common questions over individual issues. *See In re Prudential Insur. Sales Practices Litig.*, 962 F. Supp. 450, 511-512 n.45 (D.N.J. 1997) ("*Prudential I*") (citing numerous cases).

### 2.    A Class Action Is A Superior Mechanism For Adjudication

The second part of the Rule 23(b)(3) analysis is a relative comparison examining whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3).[5]

Plaintiffs satisfy Rule 23(b)(3)'s superiority requirement because common questions comprise a substantial aspect of the case and can be resolved for all Class Members in a single adjudication, obviating the need for multiple trials in multiple venues. Importantly, "[t]he potential class members are both significant in number and geographically dispersed" and "[t]he interest of the class as a whole in litigating the many common questions substantially outweighs any interest by individual members in bringing and prosecuting separate actions." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 661 (S.D.N.Y. 2015). The "small recoveries" at stake here likely "do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Tart*, 2015 WL 5945846, at *5. In addition, a class action will conserve judicial resources because "rather than individually settling [thousands of] lawsuits, the proposed Settlement allows for the named Plaintiffs, class members, and Defendants to resolve all claims … at once." *Id*. Moreover,

---

[5] Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a [trial] court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial"); *Frank*, 228 F.R.D. at 183 ("The court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement."). Moreover, "failure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored and should be the exception rather than the rule." *In re Petrobas Sec.*, 862 F.3d at 268 (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001).

it is desirable to concentrate the claims in this Court, as the Court is already familiar with the factual and legal issues in the case. A class action is the most suitable mechanism to fairly, adequately, and efficiently resolve Settlement Class Members' claims.

## V.    THE NOTICE PLAN COMPORTS WITH DUE PROCESS

Before final approval can be granted, due process and Rule 23 require that the notice provided to the Settlement Class is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). "Such notice to class members need only be reasonably calculated under the circumstances to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections*." In re Marsh & McLennan Cos., Inc. Sec. Litig*., 2009 WL 5178546, at *12 (S.D.N.Y. Dec. 23, 2009). Notice must clearly state essential information regarding the settlement, including the nature of the action, terms of the settlement, and class members' options. See Fed. R. Civ. P. 23(c)(2)(B). At its core, all that notice must do is "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) ("Visa U.S.A.") (citation omitted).

"It is clear that for due process to be satisfied, not every class member need receive actual notice, as long as counsel 'acted reasonably in selecting means likely to inform persons affected.'" *In re Adelphia Commc'ns Corp. Sec. & Derivative Litigs.*, 271 F. App'x 41, 44 (2d Cir. 2008) (quoting *Weigner v. City of N.Y.*, 852 F.2d 646, 649 (2d Cir. 1988)). The Federal Judicial Center notes that a notice plan is reasonable if it reaches at least 70% of the class. See Fed. Judicial Ctr., Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide 3 (2010).

14

The notice plan here easily meets these standards, as it reached approximately 75.34% of the Settlement Class. See Weisbrot Decl. ¶ 11.

At preliminary approval, the Court approved the Parties' proposed Notice Plan, finding it met the requirements of Rule 23 and due process. See ECF No. 34. The Plan has now been fully carried out by professional settlement administrator, Angeion Group, LLC ("Angeion"). Pursuant to the Settlement, Defendants provided Angeion with a list of available names, addresses and emails of potential Settlement Class Members. *See* Weisbrot Decl. ¶ 5. Angeion successfully delivered the Court-approved notice via email to these Settlement Class Members. See *id*. ¶ 7. In addition, Angeion implemented a comprehensive media notice program consisting of "internet banner advertisement notice, social media notice via Facebook and Instagram, [and] a paid search campaign via Google." *See id*. ¶¶ 9-12.[6] These summary notices also directed Settlement Class Members to the Settlement Website, where they were able to submit an election form online to receive payment electronically; access important court filings, including the Motion for Attorneys' Fees and all related documents; and see deadlines and answers to frequently asked questions. The Settlement Administrator also maintained a toll-free telephone line to provide information and answer questions. *See id*. ¶ 17. The success of the Notice Plan is clear, given that more than 180,000 Settlement Class Members submitted valid claims in this matter. *See id.* ¶ 18. [7]

Given the broad reach of the notice, and the comprehensive information provided, the requirements of due process and Rule 23 are easily met.

---

[6] In addition to the above-described notice efforts, Angeion implemented a customized and strategic Claims Stimulation program consisting of sponsored listings on a leading class action settlement website and postings by a social media influencer. The Claims Stimulation program used simplified messaging specifically designed to drive Settlement Class Members to the Settlement Website and ultimately submit a claim. *See Weisbrot Decl.* ¶¶ 13-15.
[7] On June 22, 2024, Angeion also notified the appropriate state and federal officials pursuant to CAFA. *See* Weisbrot Decl. ¶ 4. No objection has been received from any state or federal official.

## VI.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE FINALLY APPROVED BY THE COURT

There is a "strong judicial policy in favor of settlements, particularly in the class action context." *Visa U.S.A.*, 396 F.3d at 116 (internal quotations omitted); *see also* NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). In evaluating a class action settlement, courts in the Second Circuit consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ("*Grinnell*"). The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463.

Courts must also consider the "four enumerated factors in the new [Federal Rule of Civil Procedure] Rule 23(e)(2), in addition to the nine *Grinnell* factors." *Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*, 333 F.R.D. 314, 420 (S.D.N.Y. 2019). The Rule 23(e) factors are whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2). "There is significant overlap between the

Rule 23(e)(2) and Grinnell factors, which complement, rather than displace each other." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 2019 WL 6875472, at *14 (E.D.N.Y. Dec. 16, 2019) ("*In re Payment Card II*").

A.    **The *Grinnell* Factors**

  1.    *Litigation Through Trial Would be Complex, Costly, And Long (Grinnell Factor 1)*

By reaching a favorable settlement prior to trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). Courts have consistently held that, unless the proposed settlement is clearly inadequate, its acceptance and approval are preferable to the continuation of lengthy and expensive litigation with uncertain results. *TBK Partners, Ltd. v. Western Union Corp.*, 517 F. Supp. 380, 389 (S.D.N.Y. 1981), aff'd, 675 F.2d 456 (2d Cir. 1982).

This case is no exception. As discussed herein, the Parties have engaged in pre-motion practice and significant discovery. Sultzer Decl. ¶¶ 16, 18. The next steps in the litigation would have been resolution by the Court of Defendants' anticipated Motion to Dismiss, Plaintiffs' forthcoming motion for class certification, and Defendants' forthcoming motion for summary judgment. At minimum, these efforts would be costly and time-consuming for the Parties and the Court, and create the risk that a litigation class would not be certified and/or that the Settlement Class Members would recover nothing at all. Defendants are represented by formidable defense counsel well-versed in class action litigation, and Defendants have indicated that they would continue to assert numerous defenses on the merits. Plaintiffs and Class Counsel are also aware that Defendants would oppose class certification vigorously, and that Defendants would prepare a

competent defense at trial. And while Plaintiffs and Class Counsel were confident in the claims alleged, it is entirely possible that the Court could have sided with Defendants, leaving Plaintiffs and Class Members empty-handed.

The Settlement, on the other hand, permits a prompt resolution of this action on terms that are fair, reasonable, and adequate to the Class. This result will be accomplished years earlier than if the case proceeded to judgment through trial and/or appeals, and provides certainty, whereas litigation does not and could result in defeat for the Class on summary judgment, at trial or on appeal. Consequently, this *Grinnell* factor weighs in favor of final approval of the Settlement.

> 2.    The Reaction Of The Class Is Overwhelmingly Positive (Grinnell Factor 2)

"It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 333 (E.D.N.Y. 2010) (internal quotations omitted).

Here, the reaction of the Class Members to the Settlement has been overwhelmingly positive. Class Notice has been provided to the Settlement Class Members in accordance with the requirements of Rule 23(c)(2)(B) and the Preliminary Approval Order (ECF No. 34). *See generally Weisbrot Decl.* Zero Class Members objected to the Settlement, and only twelve opted out. *Id.* ¶ 22. This reaction and lack of objections from the Settlement Class leave no question that the Settlement Class Members view the Settlement favorably, which weighs heavily in favor of final approval and further supports the "presumption of fairness." *See, e.g., Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *4 (E.D.N.Y. 2012) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication of fairness.").

3.    *The Stage of The Proceedings And The Amount of Discovery Completed*

The third Grinnell factor considers "whether Class Plaintiffs had sufficient information on the merits of the case to enter into a settlement agreement . . . and whether the Court has sufficient information to evaluate such a settlement." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 224 (E.D.N.Y. 2013). As set forth above, Class Counsel have conducted significant informal discovery related to Plaintiffs' claims, including extensive sales, distribution and marketing information regarding the Covered Products, and the technical scientific information pertaining to the manufacturing process and suppliers regarding the sources and reasons for the *Cronobacter sakazakii* and/or *Clostridium botulinum* contamination, as well as the protocols put in place by Defendant to ensure that such a contamination does not reoccur. Sultzer Decl. ¶ 17. This is largely the information that Class Counsel would have reviewed had the matter proceeded to formal discovery. *Id*. Defendants conducted microbial testing of its manufactured nutritional beverage supplement products, which revealed the presence of *Cronobacter sakazakii* and/or *Clostridium botulinum* in some tested products. (*See* CCAC ¶ 11). In addition, Class Counsel conducted their own testing of the Products that allowed them to estimate the percentage of Products that were actually contaminated.   *See* Sultzer Decl. ¶ 20. Thus, Plaintiffs had sufficient information to evaluate the claims of the class. *See D.S. v. New York City Dep't of Educ.*, 255 F.R.D. 59, 77 (E.D.N.Y. 2008) ("The amount of discovery undertaken has provided plaintiffs' counsel 'sufficient information to act intelligently on behalf of the class in reaching a settlement.").

In fact, a number of consumer class actions cases in this Court were settled and granted final approval at similar procedural stages, (including before Your Honor). *See Patora v. Tarte, Inc.*, Case No. 18-cv-11760-KMK (S.D.N.Y.) (Karas, J); *Rapoport-Hecht v. Seventh Generation*,

Case No. 7:14-cv-09087 (S.D.N.Y.) (Karas, J.); *Mayhew, v. KAS Direct LLC*, Case No. 16-cv-6981 (Briccetti, J); *Swetz v. GSK Consumer Health*, Inc., 7:20-cv-04731-NSR (S.D.N.Y) (Roman, J).

4.    *The Risks of Establishing Liability And Damages*

"The fourth, fifth, and sixth Grinnell factors all relate to continued litigation risks," i.e., the risks of establishing liability, damages, and maintaining the class action through trial. *In re Vitamin C*, 2012 WL 5289514, at *5. "'Litigation inherently involves risks.'" *Willix v. Healthfirst, Inc.*, 2011 WL 7584862, at *4 (E.D.N.Y. Feb. 18, 2011) (quoting *In re PaineWebber*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997)). "One purpose of a settlement is to avoid the uncertainty of a trial on the merits." *Id*. In weighing the risks of certifying a class and establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 177 (internal quotations omitted).

Plaintiffs recognize that, as with any litigation, uncertainties exist. Defendants continue to deny Plaintiffs' allegations, and should this matter proceed, Plaintiffs expect Defendants will vigorously defend themselves on the merits, at each stage of litigation and likely on appeal. Most fundamentally, while Plaintiffs believe a reasonable consumer would be misled by the failure to disclose that the Covered Products contain *Cronobacter sakazakii* and/or *Clostridium botulinum*, a jury might not agree. In addition, Plaintiffs anticipate a zealous "battle of the experts" with respect to the *Cronobacter sakazakii* and/or *Clostridium botulinum* levels and the calculations of damages. Thus, "while Plaintiffs and Class Counsel believe that they would prevail on their claims asserted against [Defendants], they also recognize the risks and uncertainties inherent in pursuing the action through [the pleadings,] class certification, summary judgment, trial, and appeal." *Lowe*, 2022 WL 4621433, at *8. The proposed Settlement alleviates these risks and provides a substantial

benefit to the Settlement Class Members in a timely fashion. Accordingly, these *Grinnell* factors are met.

### 5. *The Risk of Maintaining Class Action Status Through Trial*

The Litigation settled before rulings on class certification, and the current certification is for settlement purposes only. § 1.14. As discussed above, in addition to the challenges inherent in certifying a potential national class, Plaintiffs must proffer a suitable mechanism for calculating damages in the form a class-wide price premium. While Plaintiffs believe they could establish the existence of such a premium to the Court's satisfaction, as a number of Courts in this Circuit have (*See Shaya Eidelman v. Sun Prods. Corp.*, 2022 U.S. App. LEXIS 15480, *1 (2d Cir. 2022) ("One method of demonstrating actual injury in the consumable goods context is by showing that the plaintiff paid a price premium")), this proposed settlement eliminates the unavoidable risk that they cannot. Further, "[e]ven assuming that the Court granted certification, there is always the risk of decertification after the close of discovery." *Lowe*, 2022 WL 4621433, at *8 (N.D.N.Y. Sept. 30, 2022). Given the risks, this factor weighs in favor of final approval.

### 6. *The Ability of Defendants To Withstand Greater Judgment*

Defendants probably could withstand a greater judgment. However, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (cleaned up). Thus, at worst, this factor is neutral.

### 7. *The Range of Reasonableness of The Settlement In Light of The Best Possible Recovery And In Light of All The Attendant Risks of Litigation*

The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particularized sum." *Frank*, 228 F.R.D. at 186. "Instead, there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily

inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). Because a settlement provides certain and immediate recovery, courts often approve settlements even where the benefits obtained as a result of the settlement are less than those originally sought. As the Second Circuit stated in *Grinnell*, "[t]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455 n.2. Further, In the Second Circuit, courts are required to calculate the value of a Settlement in terms of the amount of relief made available to Class Members, as opposed to the amount that may actually be claimed. *Cf. Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) (basing award of attorneys' fees on "the total funds made available, whether claimed or not" because "[t]he entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class.").

Here, the relief for which the Settlement Agreement provides is within the range of reasonableness, especially in light of the best possible recovery and all the attendant risks of litigation. The gravamen of the Litigation is that Defendant is a deceiving consumer by failing to disclose that the Covered Products may contain *Cronobacter sakazakii* and/or *Clostridium botulinum*. As set forth at length in Plaintiffs' memorandum of law in support of their motion for attorneys' fees (filed contemporaneously herewith), the $3.5 million settlement represents between approximately 31% (total disgorgement theory of damages) and 100% (price premium theory of damages) of Plaintiffs' potential recovery.  Thus, the cash compensation to which eligible Settlement Class Members will be entitled is significant relative to Plaintiffs' best day at trial. The substantial relief afforded strongly supports final approval.

B.    **The Rule 23(e)(2) Factors**

1.    *Class Counsel and Plaintiffs Adequately Represented The Class*

As set forth in Argument § IV.D. *supra*, "plaintiffs' interests are aligned with other class members' interests because they suffered the same injuries." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019). "Because of these injuries, plaintiffs have an interest in vigorously pursuing the claims of the class." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 692 (internal quotations omitted). Further, courts have previously found that Plaintiffs' attorneys adequately meet the obligations and responsibilities of Class Counsel. *See* Dkt. 32 Ex. 2-6 (docket entries for Firm Resumes of Class Counsel).

2.    *The Settlement Was Negotiated At Arm's Length*

"If a class settlement is reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation, the Settlement will enjoy a presumption of fairness." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019). "Further, a mediator's involvement in settlement negotiations can help demonstrate their fairness." *Id*. Here, both Class Counsel and counsel for Defendants are experienced in class action litigation. Sultzer Decl. ¶¶ 13, 31, 38, 61. Moreover, the parties participated in a mediation before former Chief Magistrate Judge Judge Gold and engaged in protracted settlement discussions. *Id*. ¶ 17. Judge Gold's experience as a mediator was invaluable as he is one of the most highly respected mediators in the country. *See* Tr. of Final Approval Hearing, at 9:11-20, *Bangoura v. Beiersdorf, Inc. and Bayer Healthcare, LLC*, Case No. 1:22-cv-00291-BMC (S.D.N.Y. Jan. 5, 2023) (Judge Cogan stating that "I think that the fact that Judge Gold was involved is, itself, an unusual guarantee of fairness here because he is very adept at these things.").

23

3.    *The Settlement Provides Adequate Relief To The Class*

Whether relief is adequate considers "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Rule 23(e)(2)(C)(i-iv).

As to "the costs, risks, and delay of trial and appeal," this factor "subsumes several *Grinnell* factors … including: (i) the complexity, expense and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of maintaining the class through the trial." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. at 36. The Settlement has met each of these *Grinnell* factors. Argument I.A.

As to "the effectiveness of any proposed method of distributing relief to the class," Class Members need only submit a simple claim form to receive significant monetary relief. This is a reasonable method of distributing relief to Settlement Class Members. *See Ferrick v. Spotify USA Inc.*, 2018 WL 2324076, at *8 (S.D.N.Y. May 22, 2018).

"The terms of any proposed award of attorneys' fees." In the Second Circuit, an award of attorneys' fees is based on "the total funds made available, whether claimed or not" because "[t]he entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class." *Masters*, 473 F.3d at 437. Here, Class Counsel has petitioned the Court for ------- in fees and expenses. This is one-third of the $3.5 million in monetary relief that Class Counsel has made available, which is reasonable under this Circuit.[8]

---

[8] *See Trinidad v. Pret a Manger (UDS) Ltd.*, 2014 WL 4670870, at *11 (S.D.N.Y. Sept. 19, 2014) ("[A]warding fees of 33% is common in this district."); *Hernandez v. Uzzal Pizzeria, Inc.*, 2022 WL 1032522, at *1 (S.D.N.Y. Apr. 6, 2022) (same).

24

As to "any agreement required to be identified by Rule 23(e)(3)" or "any agreement made in connection with the proposal," *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3pd at 696, no such agreement exists in this case other than the Settlement.

4.    *The Settlement Treats All Class Members Equally*

This Rule 23(e)(2) factor discusses "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *In re Payment Card I*, 330 F.R.D. at 47.

Here, although Class Members with Proof of Purchase will receive more per unit than those without Proof of Purchase, that does not mean Class Members are treated inequitably. *Patellos v. Hello Products, LLC*, 2022 WL 2159566, at *1 (S.D.N.Y. June 15, 2022) (finding "the Settlement Agreement treats the Settlement Class Members equitably relative to one another" where class members with proof of purchase could make claims for up to ten products, versus up to five products without proof of purchase); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 2020 WL 7389330, at *3 (S.D.N.Y. Dec. 16, 2020) ("[T]he agreement appears to treat class members roughly equally. The agreement sets forth a formula to determine the value of a class member's claim that depends on 1) the product purchase price in the jurisdiction where the member bought the product, and 2) the quality of proof of purchase presented by the class member."). Further, all Class Members' claims are subject to upward or downward pro rata adjustment. A *pro rata* distribution has been found by courts in this Circuit to be equitable. *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) (finding that a pro rata distribution plan "appears to treat the class members equitably … and has the benefit of simplicity"); *Gordon v. Vanda*

*Pharmaceuticals Inc.*, 2022 WL 4296092, at *5 (E.D.N.Y. Sept. 15, 2022) (finding class members were treated equally where "all class members will be subject to the same formula for the distribution of the fund") (cleaned up).

## VII.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Motion for Final Approval of the Settlement and enter the Final Approval Order in the form submitted herewith.

Dated:  March 11, 2024

/s/ Jason P. Sultzer_____

**THE SULTZER LAW GROUP P.C.**
Jason P. Sultzer, Esq.
Joseph Lipari, Esq.
Jeremy Francis, Esq.
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12061
Tel: (845) 483-7100
Fax: (888) 749-7747
E-Mail: sultzerj@thesultzerlawgroup.com
    liparij@thesultzerlawgroup.com
    francisj@thesultzerlawgroup.com

**LEVIN SEDRAN & BERMAN**
Charles E. Schaffer, Esq.
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: 215-592-1500 cschaffer@lfsblaw.com

**POULIN | WILLEY | ANASTOPOULO, LLC**
Eric M. Poulin
Roy T. Willey, IV
Blake G. Abbott
Paul J. Doolittle
32 Ann Street Charleston, SC 29403
Tel: (843) 614-8888

26

roy@akimlawfirm.com
blake@akimlawfirm.com
pauld@akimlawfirm.com

**BRADLEY/GROMBACHER LLP**
Kiley Grombacher, Esq.
31365 Oak Crest Dr., Suite 240
Westlake Village, CA
Kgrombacher@bradleygrombacher.com

**AYLSTOCK, WITKIN, KREIS &**
**OVERHOLTZ, PLLC**
Bryan F. Aylstock, Esq.
1700 East Main Street, Suite 200
Pensacola, FL 32502
baylstock@awkolaw.com

*Attorneys for Plaintiffs and the*
*Settlement Class*